Argued September 21, affirmed December 29, 1928.

# GRANT PHEGLEY ET AL. *v.* ENKE'S CITY DYE WORKS.

(272 Pac. 898.)

540

For appellant there was a brief over the name of *Mr. L. E. Schmitt,* with an oral argument by *Mr. L. E. Liljeqvist.*

For respondents there was a brief over the name of *Mr. Chester Sheppard,* with an oral argument by *Mr. W. C. Ralston.*

RAND, C. J.—On November 7, 1921, plaintiffs leased to defendant a certain storeroom in the City of Portland for a term of eight years, to commence on March 1, 1922, at an agreed rental which defendant contracted to pay of $225 per month, payable each month in advance. Pursuant thereto defendant went into possession of the leased premises and paid the rent thereon until March 1, 1926. On that date,

with plaintiffs' consent orally given, defendant delivered possession of the leased premises to one B. Metzger, a tenant of defendant who remained in possession until September 1, 1926. During his occupancy the rent was paid but whether by him or defendant the record does not disclose.

This action was brought to recover the rent from September 1, 1926, to March 1, 1927, during which time the premises were unoccupied and the rent not paid. While so unoccupied and on December 8, 1926, plaintiffs wrote defendant a letter in which they stated that they intended to rent the premises to other parties from December 15, 1926, to the end of defendant's unexpired term for the sum of $175 per month and that they would apply the amounts received on defendant's account and credit it therewith, and further stated that such renting would be for and on defendant's behalf and that in doing so they would not waive their claim against defendant for the rent provided for in the lease. There was no provision in the lease authorizing plaintiffs, upon defendant's default, to lease the premises for or on account of defendant and defendant made no reply to the letter and the lease referred to in the letter was not made or entered into.

The answer admitted the execution of the lease and that the rent for which the action was brought had not been paid. Attached to said answer was an admitted *verbatim* copy of the lease which showed that, at the time of its execution, defendant was required by its terms to pay and had paid plaintiffs the sum of $900. The lease recited that said sum shall be credited "as payment of the rental to accrue for the last four months of the term of this lease," and that as long as defendant should comply with its terms

plaintiffs should allow as a credit upon the rent to fall due thereunder interest at the rate of 6 per cent per annum to be allowed and credited semi-annually up to the commencement of the last four months' period of the term of the lease. The lease further recited that plaintiffs at the time of its execution were conducting a large mercantile business in the leased premises and that they would be compelled to remove their stock and business therefrom, and, in doing so, would incur a large expense "which is at this time impossible of estimation." It further recited that said sum of $900 should be retained by plaintiffs as stipulated and liquidated damages in case defendant should fail to perform the covenants and conditions of the lease and the lease should be canceled because of defendant's failure to perform and that defendant "hereby waives all right or claim of any kind or character to said money or any part thereof in case of forfeiture of said lease as herein provided," and that, upon defendant's performance, plaintiffs should apply the same in payment of rent as by the lease provided.

The answer further alleged that defendant abandoned the premises on March 1, 1926, when it surrendered possession thereof to Metzger, and that on September 1, 1926, both defendant and Metzger abandoned the premises; and that at that time defendant notified plaintiffs that it would not pay any rent to become due thereafter. The answer also contained the following allegation:

"That under the conditions and provisions of said lease the parties thereto agreed that in the event of a default thereof the stipulated and liquidated damages shall be limited to $900 and plaintiffs having sustained no damages the defendant is entitled to

have said $900 refunded or so much thereof as the court shall determine it is entitled to.''

It also alleged that at all times after September 1, 1926, plaintiffs had had full and complete control and possession of the leased premises.

The cause was tried by the court without a jury and plaintiffs had judgment from which defendant has appealed.

■ Defendant claims that a surrender of the lease was made on March 1, 1926, when defendant abandoned the premises, and also that a surrender was made on September 1, 1926, when Metzger removed his stock of goods from the premises, and that a surrender was made on December 8, 1926, when plaintiffs wrote the letter to which we have referred. To establish a valid surrender, it was incumbent upon defendant to allege and prove that a valid agreement of surrender had been made and entered into between plaintiffs and defendant, or to allege and show that plaintiffs had performed some act or acts in respect to the leased premises which would amount to a surrender by operation of law. The burden of alleging and proving such facts rested with the defendant: *Meagher* v. *Eilers Music House*, 77 Or. 70 (150 Pac. 266). There was no allegation of a surrender of the lease set forth in the answer. The only allegation was that defendant surrendered and abandoned the premises and notified plaintiffs that it refused to pay any rent subsequently falling due. The letter was not referred to in the pleadings although it was offered in evidence at the trial.

■ So far as Metzger's possession of the premises was concerned, there is no evidence that Metzger ever entered into any contractual relations with plaintiffs or that anything was done by him which

would discharge the defendant of its obligation to pay the rent provided for in the lease. The rule is that one who owes money or is bound to any performance whatever cannot, by any act of his own or by any act or agreement with any other person except his creditor, divest himself of liability and substitute another's liability for his own: 1 Williston on Contracts, § 411. In the footnote to said section appears the following:

"Thus, the original lessee in spite of assignment of his lease and acceptance of the landlord of the rent from the assignee remains liable on his covenant to pay rent."

■■■ The effect of a valid surrender of a lease is to discharge the lessee from the payment of any rent thereafter to become due, but it does not have the effect of releasing the lessee from his liability for any sum then due. To constitute a valid surrender of a lease by agreement of the parties there must be an offer to surrender the lease by the lessee and an acceptance or consent given to such surrender by the landlord. The mere abandonment of the leased premises and notification by the lessee to the landlord that the lessee will no longer pay rent do not constitute a valid surrender of the lease. The whole evidence shows that plaintiffs, when defendant notified them that it had abandoned the premises and that it would not pay any rent subsequently to become due under the lease, informed defendant that they would hold it to its obligations under the lease and would not accept a surrender of the lease.

■ ■ Defendant contends that by reason of the statements made in the letter a surrender took place by operation of law. We do not think that the letter

had that effect. It was merely the declaration of an intention which the evidence shows was never carried into effect. Although the letter refers to the making of a lease, no lease was made and the premises remained vacant and unoccupied during the time for which rent is demanded in the complaint. We think it is well settled in this state that a surrender is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they have both agreed to consider the surrender made. No estate could be created in any third party by the mere writing of the letter and, in fact, the lease referred to was not made. We think that the law on this question is settled by the decision in *Ladd* v. *Smith,* 6 Or. 316. In that case this court quoted with approval the following language from *Lyon* v. *Reed,* 13 Mees. & W. (Eng.) 285:

"We must consider what is meant by a surrender by operation of law. This term is applied to cases when the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate had continued to exist. There the law treats the doing of such act as amounting to a surrender. In such case it will be observed there can be no intention. The surrender is not the result of intention. It takes place independently, and even in spite of intention."

The court then added:

"We think that to this summary may be added the proposition that where the owner of the particular estate has abandoned the premises, and the owner of the reversion has entered into possession of the same, and leased them by a valid lease to a third person, and placed such person in the possession of

the premises, these facts amount to a surrender by operation of law."

See, also, *Meagher* v. *Eilers Music House,* 84 Or. 33 (164 Pac. 373). We therefore hold that no valid surrender of the lease was made either on March 1, 1926, on September 1, 1926, or on December 8, 1926, when the letter in question was written and delivered to defendant.

■ ■ This brings us to the question of whether under the provisions contained in the lease plaintiffs may retain the $900 deposited with them by defendant and at the same time maintain this action to recover the rent during the six months' period in question. Plaintiffs' contention is that the amount of the deposit was the sum fixed as liquidated damages which were stipulated to be paid upon defendant's breach of the contract, while defendant contends that the provisions for the deposit of the money are invalid because providing for a penalty. We think that neither contention is sound, but rather that the lease' provides for a contractual liability which defendant entered into upon the execution of the lease. It was stipulated that upon the full performance of the contract by defendant, it should be credited with said sum in payment of the rent during the last four months of the term and that if the conditions of the lease were broken, then the money deposited should belong to the lessors as a part of the consideration of the lease. These provisions were not in the nature of a penalty nor did they provide for stipulated damages, although that expression was used in the lease, but rather for a forfeiture of the money upon defendant's breach of the contract. The rule as to liquidated damages is stated by the author

in 1 Sedgwick on Damages (9 ed.), Sections 391, 426, as follows:

"It is competent for parties entering upon an agreement to avoid all future questions as to the amount of damages which may result from the violation of the contract, and to agree upon a definite sum, as that which shall be paid to the party who alleges and establishes the violation of the agreement.

" * * The stipulated damages are of course binding upon the plaintiff as well as upon the defendant, and the former can therefore recover nothing beyond the stipulation." See, also, 2 Williston on Contracts, §§ 776, 782.

Under this rule, if the amount deposited was intended to be the damages which were stipulated to be paid upon defendant's breach of the contract, then there could be no recovery of the unpaid rent because the damages stipulated would be the only damages recoverable by plaintiffs for defendant's breach. It is evident, however, from a consideration of all of the terms of the lease that such was not the intention of the parties. That the provisions of the lease requiring the deposit of the money and directing what shall be done with it do not provide for a penalty but do provide for a forfeiture in case of defendant's breach, we think, is equally clear. The rules governing these questions are stated by Mr. Williston as follows:

"A penalty as distinguished from a forfeiture involves the enforcement of an obligation to pay a sum fixed by law or agreement of the parties as a punishment for the failure to fulfill some primary obligation. A forfeiture deprives a man of what he previously possessed, or at least prevents him from acquiring what he has substantially paid for; a penalty subjects him to a liability beyond the actual damage

caused by his breach of the primary obligation.''
2 Williston on Contracts, § 770.

'' * * A penalty is a sum named, which is dispro-
portionate to the damage which could have been
anticipated from breach of the contract, and which
is agreed upon in order to enforce performance of
the main purpose., of the contract by the compulsion
of this very disproportion. It is held *in terrorem*
over the promisor to deter him from breaking his
promise. Liquidated damage, on the other hand, is
a sum fixed as an estimate made by the parties at
the time when the contract is entered into, of the
extent of the injury which a breach of the contract
will cause. A provision for a penalty is, therefore,
necessarily invalid, though the fact that parties do
or do not call a provision a penalty is not conclusive
of its character. A provision for a forfeiture, on
the other hand, though not favored by the law, is
not necessarily invalid. The nature of a contract
may make a provision for a specific forfeiture in
case of a breach only a legitimate agreement for
liquidated damages; and even though what is for-
feited by one who breaks a contract is disproportion-
ate to the damage suffered by the injured party,
if the latter has already acquired the forfeiture by
the partial performance of the contract he is in
many cases not deprived of any part of it or of its
value.'' Id., § 776.

In a footnote to the last section is the following:

''In *Stennick* v. *Jones,* 252 Fed. 345, 352 (164
C. C. A. 269), the court said: 'There are also many
decisions where the measure of damages for the
breach of a contract by a vendor being ascertainable
without difficulty, forfeiture will not be enforced.
But these equitable doctrines do not override the
principle that parties may make a contract to run for
years, and of a character where, actual damages
being uncertain of estimation, there may be pro-
vision for a forfeiture or transfer of ownership in
case of a substantial breach, which the courts, after

inquiry will enforce. *Edmonds* v. *Spanish R. P. & P. Co.*, 206 Fed. 92.' "

From what has been quoted, it is clear that the lease did not provide for a penalty but did provide for a forfeiture in case defendant breached his contract. It recites that the $900 was deposited and that plaintiffs should credit in payment of rentals to fall due thereunder semi-annually interest thereon at 6 per cent per annum until the beginning of the last four months' period of the term and then provided that the $900 should be applied in payment of the rent falling due during the last four months of the term. If the defendant had complied with the terms of the lease, it would have received credit for the amount deposited upon its obligations at the end of the term but not having so complied, the amount became forfeited to plaintiffs upon defendant's default and plaintiffs are entitled to retain the same. That the money was not deposited as security for the payment by defendant of the rent is also clear. If it had been, defendant would be entitled to a return of the sum deposited less the amount of rent due and unpaid at the time of the termination of the lease. Here we have a forfeiture of a sum of money amounting to the rent for four months of an eight-year term, and a contract providing for the forfeiture of a sum equal to one twenty-fourth of the entire rent to be paid during the term is not unreasonable nor is it unjust for plaintiffs to retain same upon defendant's default at the middle of the term. A lease providing for a forfeiture of this nature was upheld and the forfeiture enforced in *Galbraith* v. *Wood*, 124 Minn. 210 (144 N. W. 945, Ann. Cas. 1915B, 609, 50 L. R. A. (N. S.) 1034). It was held in that case that the lessor was entitled

to retain an advance payment that had been made at the time the lease was executed. One of the grounds for so holding was that the amount had been paid as a consideration for the lease and also that the title to the money so paid had passed to the lessor. In that case, the lease was for a term of fifteen years and contained a provision that the lessor could terminate the lease upon the insolvency or bankruptcy of the lessee and the lease was terminated by the lessor upon that ground. Notwithstanding this, the court held that the amount so paid as a consideration for the lease could not be recovered by the trustee in bankruptcy. In that case the amount deposited was to be applied in partial payment of the rent to become due during the last four years of the term. While the facts are somewhat dissimilar, the reasoning in that case is applicable to the questions involved here.

For the reasons stated, we hold that the $900 was made as an advance payment on the rent for the last four months of the term, that it was the default of the defendant that prevented its right to have the payment so applied and that it cannot recover back the payment so made. We also hold that there has been no valid surrender of the lease during or prior to the time for which the rent was claimed. From this it follows that the judgment of the lower court must be affirmed. AFFIRMED.

BEAN and COSHOW, JJ., absent.