# ALL-STATES LEASING COMPANY,
## *Respondent - Cross-Appellant,*
### *v.*
# OCHS, et al,
## *Appellants - Cross-Respondents.*
## (No. 77-1948, CA 11421)

600 P2d 899

[320-a]

[320-b]

William C. Wolke, Roseburg, argued the cause for appellants - cross-respondents. With him on the brief was Luoma, Kelley & Wolke, Roseburg.

Paul Gerhardt, Portland, argued the cause and filed the briefs for respondent - cross-appellant.

Before Schwab, Chief Judge, and Lee and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Plaintiff is a Montana Corporation in the business, nationwide, of leasing all types of equipment. Defendants Ochs own and operate the Myrtle Creek Hospital and Medical Center, which leased from plaintiff a Burroughs L-5000 computer for use in its bookkeeping. Defendants ceased paying rent for the computer after it continually malfunctioned. Plaintiff ultimately accelerated the balance of rental payable under the lease, took possession of the computer and sold it through private bidding. This action is for the accelerated balance of rental payable under the lease less the amount obtained upon resale.

Defendants asserted an affirmative defense and four counterclaims. They were withdrawn from the jury, which returned a verdict of $5,975 for plaintiff. Defendants appeal the court's refusal to submit their affirmative defense and counterclaims to the jury, to the refusal to give, and the giving of, certain jury instructions, and the court's award of attorney's fees to plaintiff. Plaintiff cross-appeals, also claiming error in the court's instructions. We affirm.

When defendants began considering the purchase of a computer to replace their existing system, Dr. Ochs, one of the defendants, contacted a Burroughs distributer to inquire about the L-5000 computer with which he had become familiar while associated with a clinic in California. After a demonstration by Burroughs, Dr. Ochs decided to purchase a used L-5000, based upon representations and assurances made by Burroughs and upon his prior experience with that model. He signed a purchase agreement with Burroughs, but shortly thereafter, for reasons relating to cash flow and tax considerations, decided to lease the machine. Burroughs did not lease equipment, so defendants made arrangements for plaintiff, with whom defendants had dealt on another matter, to purchase the computer and lease it to them.

[321]

All-States' standard lease form was executed by the parties on June 26, 1975; it did not include an option to purchase, but the parties appear to agree that an option was agreed upon later. In the lease, plaintiff disclaimed[1] all warranties, express or implied, and assigned to defendants all of plaintiff's rights against Burroughs.[2]

Problems arose with the equipment soon after delivery to the hospital. After unsuccessful attempts by Burroughs to cure the problems, defendants ceased making payments, and in June, 1977, plaintiff accelerated the lease payments and demanded surrender of the computer. Defendants shipped the machine to plaintiff who, over a period of time, requested bids from a list of purchasers to whom it had sold repossessed equipment in the past. Finally, the computer was sold in February, 1978, for $1800. After receiving the computer, but before selling it, plaintiff brought this action for the balance of rental due under the lease.

This case presents myriad complex issues relating to the application of the Oregon Uniform Commercial Code (UCC) to a commercial transaction. Although many of them are argued in the briefs, not all of them are properly before us. The complaint simply alleged the execution of the lease, defendants' failure to make the lease payments due May 10, 1977, and thereafter, and that the balance of the unpaid rentals is due and owing from defendants. The answer is a general denial followed by an affirmative defense premised on unconscionability within the meaning of ORS 72.3020, and

---

[1] The disclaimer was not conspicuous as required by ORS 72.3160(2) and defined by ORS 71.2010(10). Therefore, we give no effect to the disclaimer. *See* Anno. 73 ALR3d 248.

[2] Defendants contend that plaintiff agreed to a modification of the warranties when it purchased the computer from Burroughs, and the rights assigned to defendants were limited thereby. It appears, however, that the warranties contained in the purchase agreement signed by defendant Dr. Ochs when defendants were considering the purchase of the computer from Burroughs conform to those given plaintiff and assigned to defendants. We do not decide what effect, if any, the lessor's agreeing to a limitation of warranties might have in a transaction of the kind involved here.

four counterclaims for damages for breach of (1) express warranties; (2) implied warranty of merchantability; (3) implied warranty of fitness for a particular purpose, and (4) ORS 646.608(1)(e) and (k) (unfair trade practices) in the making of certain false and misleading representations. The reply was a general denial together with an affirmative allegation of an accord and satisfaction with defendants whereby they agreed to "withdraw" their claims on which their affirmative defense and four counterclaims are premised.[3]

■ From the foregoing summary outline of the pleadings, it is apparent that defendants did not allege that the arrangement was not a true lease, but was a secured transaction to which ORS 79.1010 to 79.5070 (Uniform Commercial Code - Secured Transaction ) applied.[4] However, defendants took that position at trial and plaintiff did not contend that the issue was not properly raised. The trial court treated the issue properly as one of law, holding that the transaction was intended as a secured transaction. That issue, then, we treat as properly before us.

■ Plaintiff has assigned error to that determination and the applicability of the requirements that flow from it. Whether a lease is a "pure" lease or one intended as security, and therefore controlled by the provisions of ORS 79.1010 to 79.5070, depends upon the intention of the parties as determined by the facts of each case. Even though the determination is made on a case by case basis, the presence of certain factors

---

[3] Defendants filed a third party complaint against Burroughs, but it was stricken on Burroughs' motion; the order recited that the motion was granted on the condition that if the third party plaintiffs (defendants here) institute a separate action against Burroughs based on the same claims that action "shall be deemed to have commenced on October 14, 1977." No issue involved in the third party complaint, or the order striking it, is before us on this appeal.

[4] Defendants excuse this posture of the case by pointing out that plaintiff had not sold the computer when the complaint was filed. However, a supplemental answer could have been filed after the sale. As things stand, the pleadings do not frame the issues.

[323]

can be indicative, including, but not limited to: (1) whether the lessee is given an option to purchase the equipment, and, if so, whether the option price is nominal, ORS 71.2010(37);[5] (2) whether the lessee acquires any equity in the equipment; (3) whether the lessee is required to bear the entire risk of loss; or (4) pay all charges and taxes imposed on ownership; (5) whether there is a provision for acceleration of rent payments, and (6) whether the property was purchased specifically for lease to this lessee.

■ While the agreement here does not contain an option to purchase, the parties apparently did agree subsequently on one whereby defendants were granted an option to purchase the computer at the end of the seven-year term for 10% of the original purchase. price. There is, however, no evidence as to what the fair market value of the computer would be at the end of the term, so we cannot determine whether the option called for only nominal consideration. *Peco, Inc.*

---

[5] ORS 71.2010(37) states:

"Subject to additional definitions contained in other sections of the Uniform Commercial Code which are applicable to a specific series of sections, and unless the context otherwise requires, in the Uniform Commercial Code:

"* * * * *

"(37) 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to a reservation of a 'security interest.' The term also includes any interest of a buyer of accounts or chattel paper which is subject to ORS 79.1010 to 79.5070. The special property interest of a buyer of goods on identification of such goods to a contract for sale under ORS 72.4010 is not a 'security interest,' but a buyer may also acquire a 'security interest' by complying with ORS 79.1010 to 79.5070. Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest' but a consignment is in any event subject to the provisions on consignment sales. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

*v. Hartbauer Tool and Die Co.*, 262 Or 573, 500 P2d 708 (1972). If it were clear that the option price was nominal, that is, that there would be no "sensible alternative" to the exercise of the option, that factor alone would be sufficient to make the lease intended for security. ORS 71.7010(37); *Peco, Inc. v. Hartbauer Tool and Die Co., supra.* However, the existence of the option in and of itself is not determinative of whether the lease was intended as security.

■ Therefore, other factors involved in the transaction must be considered. Here, the agreement provides for an acceleration of rental payments in the event of default; the lessee is required to bear the entire risk of loss, to insure the computer, and to pay all taxes imposed upon the equipment; further, the equipment was selected by the lessee, purchased by the lessor specifically for the lessee's use, and was delivered directly to the lessee. Those factors, coupled with the fact that plaintiff fashions itself as a "financing lessor," whose only function was to provide the funds for the computer and whose principal concern was to be secured adequately in doing so, lead us to the conclusion that the lease is one which was "intended for security" and is governed by the provisions of ORS 79.1010 to 79.5070.

■ Upon default by defendant, plaintiff, under ORS 79.5040[6] and the terms of the lease, was entitled to

---

[6] ORS 79.5040 provides in pertinent part:

"A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to ORS 72.1010 to 72.7250 on sales. The proceeds of disposition shall be applied in the order following to:

"* * * * *

"(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in

take possession of the computer (which it did) and to dispose of it so long as all aspects of the disposition "including the method, manner, time, place and terms" are commercially reasonable. ORS 79.5040(3). Both parties have assigned error to the court's instructions to the jury on this issue. Although plaintiff's contention in this court is correct that the trial court erred in defining "commercially reasonable" as including the requirement that the disposition result in "the highest price obtainable," *Vetter v. Bank of Oregon*, 39 Or App 181, 591 P2d 768 (1979), it did not raise that objection adequately below. Plaintiff took exception to the instruction on the ground that ORS 79.5040 was not applicable because the transaction involved a true lease, not a secured transaction, and therefore the "commercially reasonable" standard imposed by the UCC was inapplicable. Actually, it takes the same position here: plaintiff does not seek a new trial; it asks that we reverse and remand with instructions to enter judgment for the full amount plaintiff claims. We do not, therefore, consider the error in our disposition of the case.

The defendant assigns error to the court's instructions on the factors relevant in determining commercial reasonableness. We conclude that the jury was adequately instructed on that issue. Defendant's contentions regarding the unreasonableness of plaintiff's selling the collateral without repairing it and holding

---

value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

it for eight months before selling it were proper subjects for jury argument, not specific instructions. *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 546 P2d 1065 (1976); *Spears v. Huddleston*, 265 Or 168, 508 P2d 438 (1973).

■ The record presents a jury question as to whether plaintiff sold the computer in a commercially reasonable manner. The trial court instructed the jury that plaintiff had the burden of proof on this issue, and although no objection was made to this allocation of the burden, it may have been more favorable to defendants than it should have been, at least in the procedural context in which the issue arose. The instructions, taken as a whole, fairly presented the law on this issue and followed the statutory language in most respects, with the exception noted above (which favored defendants) to which no proper objection was made.

■ In addition to requiring the secured party to dispose of the collateral in a commercially reasonable manner, ORS 79.5040(3) requires the secured party to give to the debtor "reasonable notification of the time after which any private sale * * * is to be made * * *." Plaintiff sent defendants a letter dated September 26, 1977, advising of several offers, the highest of which was $2,000, and further advising that it would sell the equipment for $2,000 if no reply from defendants was received within 10 days. Plaintiff contends that the trial judge should have ruled as a matter of law that the notice was adequate, and should not have left the matter of reasonableness to the jury. We agree that the notice given fulfilled the apparent statutory purpose—to let the debtor know that the property was to be sold at private sale after a specified time and allowing the debtor to produce a buyer or make other arrangements to satisfy the secured party, if possible.

However, as we view the record, the real issue was whether plaintiff had proceeded in a commercially reasonable manner, and we think it is highly unlikely

that the very limited reference in the instructions to whether plaintiff gave reasonable notice affected the jury verdict. The fact that plaintiff did not in fact sell the computer for $2,000 immediately following the expiration of the ten-day period specified in the notice, but sold it for $1800 about four months later, were matters which could be argued with respect to the question of commercial reasonableness of the disposition of the computer. Accordingly, it appears that any concern the jury might have had with respect to the question of the reasonableness of the notice would relate to the principal issue of commercial reasonableness, and could be argued even if the reasonableness of the notice were eliminated from the case. The error, then, was harmless.[7]

■ Defendants assign error to the refusal of the trial court to instruct the jury that if it found that plaintiff did not dispose of the collateral in a commercially reasonable manner, plaintiff was not entitled to recover any sum from defendants. Stated differently, the contention is that if the secured party does not comply with the provisions of ORS 79.5040, he may not collect any deficiency from the debtor.

This issue has not been decided in Oregon. In those jurisdictions which have addressed this problem three lines of authority have emerged: (1) the creditor may recover the deficiency subject only to reduction for any damages suffered by the debtor; (the damages being, presumably, the difference between the fair market value of the collateral and the actual sales price), *Abbott Motors, Inc. v. Ralston*, 28 Mass App Dec 35 (1964); (2) noncompliance with the statute gives rise to a presumption in favor of the debtor that the collateral was worth the amount of the outstanding debt at the time of default and the debtor is freed from any deficiency unless the creditor proves that the fair market value of the collateral was no greater than the

---

[7] As noted above, plaintiff does not seek a new trial by its cross-appeal, and it is not entitled to the relief it seeks.

sales price, *Universal C.I.T. v. Rone*, 248 Ark 665, 453 SW2d 37 (1970); and (3) the creditor loses his right to recover any deficiency. *Skeels v. Universal C.I.T. Credit Corporation*, 222 F Sup 696 (W D Pa 1963). (*See* White and Summers, Uniform Commercial Code 1000-1007 (1972).)

We agree with those courts which have held that a secured party's failure to comply with ORS 79.5040 does not preclude a deficiency. This view is most consistent with the statute's underlying theme of commercial reasonableness and with ORS 79.5070(1),[8] which permits the debtor to recover from the creditor "any loss caused by a failure [of the creditor] to comply with the provisions of ORS 79.1010 to 79.5070."

As between alternatives (1) and (2), the difference lies in the placing of the burden of proof as to fair market value. Admittedly there is a risk of confusing a jury with the concept of a commercially reasonable sale, which need not bring the fair market value of the goods, and evidence of fair market value, particularly where the burden as to that value is placed on the secured party. Nevertheless, we think alternative (2) is the more fair solution. We so conclude because the secured party who has not conducted a commercially reasonable sale ought to have the burden of proving his right to a deficiency, and because the secured party

---

[8] ORS 79.5070(1) provides:

"If it is established that the secured party is not proceeding in accordance with the provisions of ORS 79.5010 to 79.5070 disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of ORS 79.5010 to 79.5070. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus 10 percent of the case price."

Defendants did not assert a counterclaim under this section, but our holding has the effect of allowing an automatic offset of at least a part of the loss the debtor may have sustained by the failure of the secured party to sell the goods in a commercially reasonable manner.

has possession of the goods and is in a better position to adduce evidence of fair market value than is the debtor. The risk of confusion may be minimized by careful jury instructions making it clear that evidence of fair market value may not be considered in determining whether the goods were sold in a comercially reasonable manner, but may only be considered if the jury concludes that the goods were not so sold.

We hold, therefore, that when the creditor seeks a deficiency but has failed to sell the goods in a commercially reasonable manner, the debtor is entitled to be credited with the fair market value rather than the actual sales price. The court's instructions to the jury were based on this theory. We find no error.

■ No question is raised in this case as to whether the secured party or the debtor has the burden of proof of fair market value where the disposition of the goods has not been commercially reasonable. It is sufficient to point out that defendants introduced such evidence, although plaintiff now argues that some of it was hearsay and could not support defendants' contention that the computer, with the programs, should have sold for as much as $10,000. No error is assigned to the admission of that evidence, and we do not consider plaintiff's contention.

■ Defendants assign error to the trial court's withdrawing from the jury the affirmative defense of unconscionability of the lease under the UCC, and the counterclaims relating to the breach of various warranties[9] and the breach of the Unfair Trade Practices

---

[9] At first blush, ORS 72.1020 might appear to exclude from UCC - Sales (ORS 72.1010 to 72.7250) all security transactions. It provides:

"Unless the context otherwise requires, ORS 72.1010 to 72.7250 apply to transactions in goods; they do not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate *only* as a security transaction nor do ORS 72.1010 to 72.7250 impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers." (Emphasis added.)

We read the section to exclude only those transactions where collateral is

Act. We will deal with the first and last points, and then with the warranty questions.

■ Under ORS 72.3020,[10] if the court as a matter of law finds the contract or any clause thereof to have been unconscionable at the time it was made, the court may refuse to enforce the contract or may enforce it without the unconscionable clause. The trial court found the lease not to be unconscionable; we agree. No useful purpose would be served by a detailed discussion. The official Comments to the section indicate that the purpose of the section is to permit courts to pass directly on the question as a matter of law without resorting to strained devices used in the past. The basic test, the Comments state, is "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. * * * The principle is one of the prevention of oppression and unfair surprise * * *, and not of disturbance of allocation of risks because of

transferred by a debtor to a creditor solely as security. For example: A asks B for a loan; B agrees to make the loan if A gives B a bill of sale to his automobile. On its face, the transaction is a present sale of the automobile, but is intended only as a security transaction and is excluded from UCC--Sales. This construction is borne out by *Associates Discount Corp. v. Palmer*, 47 NJ 183, 219 A2d 858 (1966), where a "Bailment Lease Security Agreement" was held not excluded because it was a combined contract for sale and security agreement. Cf. *Steiner v. Mobil Oil Corp.*, 20 Cal 3d 90, 141 Cal Rptr 157, 569 P2d 751 (1977). (Agreement for sale of gasoline which included security provisions was not excluded.)

[10] ORS 72.3020 provides:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

superior bargaining power." (UCC, Comment, § 2-302). *And see Zemp v. Rowland,* 31 Or App 1105, 1109, 572 P2d 637 (1977); *W. L. May Co. v. Philco-Ford Corp.,* 273 Or 701, 708, 543 P2d 283 (1975).

Although there may be provisions of the lease which might not be enforceable under ORS 72.3020, or for other reasons, none of them is involved here. The plaintiff here was treated correctly as a secured party and permitted to enforce its security interest in accordance with the UCC article 9. There is nothing unconscionable in the lease as so treated.

■ ■ Defendant's counterclaim under the Unfair Trade Practices Act is premised on ORS 646.608(1)(e) and (k), which provide:

"(1) A person engages in an unlawful practice when in the course of his business, vocation or occupation he:
"* * * *

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that he does not have;
"* * * * *

"(k) Makes false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred;"
"* * * * *."

The alleged misrepresentations under (k) include the contention that the transaction purported to be a lease, but was really a secured transaction. In light of the fact that it was defendants' decision to lease the equipment rather than purchase it, but when the lessor attempted to enforce the agreement as a lease, defendants successfully contended that it was a security agreement, we fail to see how defendants could have been prejudiced; they had it both ways. Other allegations relate to alleged misrepresentations under subsection (e) by Burroughs, alleged to be plaintiff's

agent. There is no evidence that Burroughs was plaintiff's agent; defendants selected the equipment and asked plaintiff to purchase it and then lease it to defendants.

■ The other contention relating to ORS 646.608(1)(k) appears to be that in representing that defendants would realize substantial savings, plaintiff advised defendants that they would be entitled to receive the investment tax credit for leased equipment, which defendants later determined was not available on used equipment. We think it clear that the word *credit* as used in subsection (k) does not include a tax credit. In any event, the evidence is that defendant Ochs requested that the credit be passed to him, and plaintiff subsequently sent a letter passing that credit to him, if it was available.

The trial court did not err in withdrawing this counterclaim from the jury.

■ Defendant's counterclaims based on a breach of warranties are in three categories: breach of express warranties, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability. The first two categories present little difficulty in this case. The express warranties alleged were claimed to have been made by Burroughs, as plaintiff's agent. As noted above, there is no evidence to support the alleged agency relationship.

■ The implied warranty of fitness for a particular purpose is governed by ORS 72.3150, which provides:

> "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under ORS 72.3160 an implied warranty that the goods shall be fit for such purpose."

It is clear in this case that defendants did not rely on plaintiff's "skill or judgment to select or furnish suitable goods" for their particular purpose. Defend-

ants, not plaintiff, selected the goods, and if there was any reliance as to the suitability thereof, it was on Burroughs, not plaintiff.

■ The more difficult question is whether the implied warranty of merchantability, which by the express terms of ORS 72.3140[11] is applicable to the sale of goods, also applies to the lease of goods. We observe that the UCC is more concerned with the rights and obligations which attach to a transaction which has certain characteristics and with respect to which the parties have certain intentions, than it is with the form in which the transaction is cast. We have held in this case, for example, that a lease transaction has a sufficient number of attributes to require that the rights and obligations of the parties be determined under chapter 9 of the Oregon UCC as a secured transaction. It was not necessary to conclude that the transaction was a sale—title has not passed, and might never pass, to the "lessee"—to treat the parties

---

[11] ORS 72.3140 provides:

"(1) Unless excluded or modified as provided in ORS 72.3160, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as:

"(a) Pass without objection in the trade under the contract description; and

"(b) In the case of fungible goods, are of fair average quality within the description; and

"(c) Are fit for the ordinary purposes for which such goods are used; and

"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) Are adequately contained, packaged and labeled as the agreement may require; and

"(f) Conform to the promises or affirmations of fact made on the container or label if any.

"(3) Unless excluded or modified as provided in ORS 72.3160 other implied warranties may arise from course of dealing or usage of trade."

in the context of this transaction as a secured party and a debtor. Further, it need not follow, under UCC concepts, that because the transaction is a secured transaction, it resulted in a sale. It is the rights and obligations of the parties with which the Code is concerned, given a transaction having certain attributes.

We see no reason why the same approach would not be applicable with respect to implied warranties, depending on the particular circumstances of a transaction. At least some courts have applied, by analogy, the implied warranty of merchantability to some equipment leases. *See* White and Summers, *op cit., supra,* 286-87; *All-States Leasing Company v. Bass,* 96 Ida 873, 538 P2d 1177 (1975).

Assuming, arguendo, that we accept that analogy, we must determine whether plaintiff is a "merchant with respect to goods" of the kind involved in this transaction (ORS 72.3140) within the meaning of ORS 72.1040(1), which defines "merchant":

> " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

The official comment to that section states that the language of ORS 72.3140 "restricts the implied warranty to a much smaller group than everyone who is engaged in business and requires a professional status as to particular kinds of goods." UCC, Comment, § 2-104.

The evidence here indicates that plaintiff, in the conduct of its business, enters into lease-financing arrangements with respect to all kinds of goods and equipment; it also indicates that it has done so on a few other occasions with respect to computers. That

[335]

evidence is not sufficient to make it a "merchant," particularly where, as here, there is no evidence that plaintiff had, or purported to have, any expertise with respect to the equipment, did not offer it to defendants and defendants arranged for plaintiff to purchase it for lease to defendants. The Idaho court in the *Bass* case reached the same conclusion, even though the lessor had leased the same kind of equipment on 40 or 50 prior occasions.

We hold, therefore, that the trial court did not err in withdrawing from the jury defendant's counterclaim based on the warranties.

■ Defendants further contend that the trial court erred in instructing the jury that plaintiff was entitled to recover an amount not to exceed $13,325.22 because it amounted to a directed verdict for plaintiff. That amount represented an arithmetical computation of the balance due under the lease discounted to its present value, and was less than the amount claimed in plaintiff's complaint. There was no evidence to the contrary, and the court went on to instruct the jury that if it found plaintiff had not disposed of the computer in a commercially reasonable manner, it should deduct the difference between the amount that the equipment should have sold for and the actual sales price. The verdict could have been close to zero. We find no error.

■ Lastly, defendants assign error to the award of attorney fees to plaintiff. The lease provided for attorney fees to the prevailing party, and was attached to the complaint, which prayed for attorney fees. The complaint did not comply fully with the ground rules laid down in *Pritchett v. Fry*, 286 Or 189, 593 P2d 1133 (1979), and the issue was not submitted to the jury. However, at the conclusion of the case counsel for the parties stipulated that if attorney fees were to be awarded, the court could set them out of the presence of the jury based upon counsel's affidavit as to time spent and without further proof of reasonableness.

Defendants objected to plaintiff's cost bill, which included a request, supported by affidavit, for attorney fees. After hearing, the court allowed less than one-half of the amount requested. Defendants are in no position to complain in light of the stipulation.

The judgment of the trial court is affirmed.