Argued and submitted December 5, 1980,
reversed and remanded July 6, 1981

RUCHABER et al,
*Respondents,*
*v.*
SHORT,
*Appellant.*

(No. L79-2157, CA 17765)

630 P2d 915

Donald A. Dole, Roseburg, argued the cause for appellant. With him on the briefs were Cathleen B. Herbage and Neuner, Dole, Caley & Kolberg, Roseburg.

James H. Spence and Spence & Banta, Roseburg, filed the brief for respondents.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

### WARREN, J.

Plaintiffs brought this action against defendant for breach of a sale/security and lease agreement. They sought to recover the balance of defendant's outstanding debt, less the amount realized upon their disposition of the collateral, and accrued rent from January 8, 1979, to May 18, 1979. The case was tried to the court, and judgment was entered in favor of plaintiffs. Defendant appeals.

In early 1979, plaintiffs and defendant executed a written agreement which provided for: (1) the purchase for $34,026 by defendant of plaintiffs' inventory in a grocery store and his sublease of the premises, effective January 6, 1979; (2) the retention by plaintiffs of a security interest in the inventory and its proceeds; and (3) the agreement being contingent upon defendant's obtaining, through a good faith effort, a license from the Oregon Liquor Control Commission (OLCC) within 60 days from the date of the agreement.

On April 9, 1979, plaintiff Harry Ruchaber (Ruchaber) received a letter from defendant's attorney informing plaintiffs of defendant's intent to cancel their agreement and enclosing the keys to the premises. The letter stated that, even though defendant had made a good faith effort to secure a license from OLCC, he had failed to obtain one in 60 days. In consequence, defendant disclaimed any responsibility under the agreement.

On April 10, 1979, plaintiffs retook possession of the store, told defendant's employee to leave because they were closing the business and changed the locks. The value of the inventory on that date was $28,005.

On May 8, 1979, plaintiffs notified defendant that his purported cancellation of their agreement was invalid due to his failure to exercise good faith in his application for a license from OLCC, that they considered him to be in breach of their agreement and that the balance of the inventory purchase price was due and owing, together with the unpaid rent. Plaintiffs also informed him that they planned to sell the inventory by a private sale, pursuant to ORS Chapter 79. The sale would be subject to defendant's right to redeem his interest under ORS 79.5060 by May 18,

1979. Moreover, in the event the price realized on the sale of the inventory was less than the balance owed by defendant, plaintiffs stated they were prepared to seek a deficiency judgment.

On May 18, the inventory was sold to a third party. Ruchaber testified that the value of the inventory on that date was $27,997, leaving a deficiency of $6,029. Defendant's total rental payment made under the agreement was $500.

Defendant contends that plaintiffs failed to dispose of the inventory and its proceeds in a commercially reasonable manner as directed by ORS 79.5040. He specifically challenges their disposition of the perishables and the cash and checks present in the store cash register on the date plaintiffs regained possession of the premises. The parties' agreement provided that upon default the secured party would have all rights granted by their agreement and the Uniform Commercial Code of Oregon.

■      ORS 79.5040 provides in pertinent part:

"(1)   A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. * * *

"(2)   If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. * * *

"(3)   Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but *every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. * * * " (Emphasis supplied.)

At trial Ruchaber testified that, on the advice of his attorney, "we left all the perishable products in the store to give defendant a chance to make good what we claimed to be

* * * the deficiency in the lease and inventory." He admitted that the perishables eventually had to be thrown away and that they naturally could not sell this merchandise to the new owners. We find that plaintiffs failed to dispose of the perishables in a commercially reasonable manner as prescribed by ORS 79.5040, which implicitly envisions an accelerated disposition of collateral that is perishable.

As to the proceeds, Ruchaber testified that he found cash and checks in the store register upon the repossession and that he deposited them in the store account. When asked on cross-examination whether he had a record of the amount, Ruchaber said he did not have a record in his possession, but that his attorney did. No evidence of the amount of cash or checks was ever admitted at the trial, nor did plaintiffs prove that the amount of these proceeds were included in their calculation of the total amount of collateral received on default. We, therefore, conclude that plaintiffs did not dispose of these proceeds in a commercially reasonable manner. ORS 79.5040.

We now must determine whether plaintiffs, who have failed to dispose of collateral in a commercially reasonable manner, are entitled to collect any deficiency from defendant.

In *All-States Leasing v. Ochs,* 42 Or App 319, 328-330, 600 P2d 899 (1979), we held that when a secured party does not comply with ORS 79.5040:

> "[A] presumption [arises] in favor of the debtor that the collateral was worth the amount of the outstanding debt at the time of default and the debtor is freed from any deficiency unless the creditor proves that the fair market value of the collateral was no greater than the sales price, * * *.
>
> " * * * * * *
>
> " * * * We so conclude because the secured party who has not conducted a commercially reasonable sale ought to have the burden of proving his right to a deficiency, and because the secured party has possession of the goods and is in a better position to adduce evidence of fair market value than is the debtor. * * * ."[1]

---

[1] We note that other jurisdictions, which have adopted this presumption similarly place the burden of proving a right to a deficiency on the secured party. *See* 8 Pike and Fischer, Uniform Commercial Code Case Digest, para. 9507.6 (1980).

While we may speculate that the value of the perishables was negligible by subtracting the May 18 inventory ($27,996.67) from the April 10 inventory ($28,005.22), we have no way of determining the value of the cash and checks. Granted, it is probable that the amount of cash and checks did not equal plaintiffs' claimed deficiency of $6029; nevertheless, we have no way of knowing, based on the record, that that was the case. Thus, we conclude that plaintiffs failed to prove their right to any deficiency.

Defendant also assigns as error the trial court's award to plaintiffs of $3,460 for accrued rent from January 8, 1979, to May 18, 1979. The parties' sale and lease agreement provides that:

"the Buyer shall pay Seller a base rent of $17,500.00 on such terms as the Buyer elects to use, excepting, however, that payment shall be made at least in the following amounts: $500.00 forthwith and $500.00 each calendar month payable by the 15th day of each month, commencing with February, 1979. In addition, $4,000.00 shall be paid on or before May 1, 1980 and $4,000.00 on or before November 1, 1980. Interest accrues at 10% per annum on all deferred balances of said $17,500.00, commencing with January 8, 1979."

In its special findings of fact and conclusions of law, the trial court did not specifically find on what date defendant surrendered the premises or when plaintiffs accepted his surrender. The court, however, adjudged plaintiffs entitled to rent from January 8, 1979, the date defendant took possession, to May 18, 1979, the date plaintiffs leased the property to a third party. By implication, the court must have concluded that on May 18, 1979, plaintiffs accepted defendant's surrender of the premises.

We find, however, that it was on April 10, 1979, that plaintiffs accepted defendant's surrender of the property. *See Tracy v. Thun,* 125 Or 323, 267 P 398 (1928). It was on this date that Ruchaber reentered the property, told defendant's employees to leave, repossessed the inventory and, most importantly, changed the locks. These acts by plaintiff were inconsistent with the continued relation of landlord and tenant and taken together demonstrate, as a matter of law, that plaintiffs accepted defendant's surrender. *Phegley v. Enke's City Dye Works,* 127 Or 539, 545, 272

P 898 (1928). Hence, plaintiffs are entitled to accrued rent, as calculated pursuant to the parties' agreement, from January 8, 1979, to April 10, 1979.

Reversed and remanded for entry of judgment consistent with this opinion.