Argued and submitted January 8, reversed and remanded May 26, 1982

MEYERS et ux,
*Appellants,*
*v.*
ARNOLD et ux,
*Respondents,*

ARNOLD et ux,
*Third-Party Plaintiffs-Respondents,*
*v.*
COLE,
*Third-Party Defendant-Respondent.*

(No. 38804, CA A20754)

645 P2d 577

Evan P. Boone, Newport, argued the cause for appellant. With him on the briefs was Minor, Yeck & Beeson, Newport.

J. W. Walton, Corvallis, argued the cause for third-party plaintiffs - respondents. With him on the brief was Ringo, Walton, Eves & Gardner, Corvallis.

James M. Gillis, Newport, argued the cause for third-party defendant - respondent. With him on the brief was Litchfield, Macpherson, Carstens & Gillis, Newport.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiffs appeal from a judgment for defendant on the pleadings in this action to recover the balance allegedly due on a promissory note and to foreclose an alleged security interest in personal property. We reverse.

This dispute arose after plaintiffs (the secured parties) sold a service station business to defendants (debtors). The pleadings allege the following facts: Defendants executed a promissory note in favor of the plaintiffs in the amount of $13,296.65. They also executed a security agreement in favor of the plaintiffs. The agreement listed as collateral several items of personal property, including two metal buildings.

Defendants later sold the metal buildings to David L. Cole, who assumed defendants' obligation under the note. When Cole could no longer make his payments on the note, he sold the buildings to Jerry Gregory, who likewise assumed the obligation to make payments on the note. Gregory then agreed to "release" the two metal buildings to the plaintiffs. In return for the buildings, the plaintiffs agreed to allow a credit of $5,500 on the promissory note. Although the plaintiffs alleged that defendants had knowledge of the transaction with Gregory, they later represented to the court that such was not the case.

Following the "release" transaction, $5,669.48 remained owing on the note. The plaintiffs sued defendants for that amount. Defendants answered with the affirmative defense that the plaintiffs had violated ORS chapter 79, the Uniform Commercial Code, by foreclosing on the metal buildings without notifying defendants and by failing to dispose of the buildings, following foreclosure, in a commercially reasonable manner. Defendants also alleged that they had no knowledge that the plaintiffs had acquired the metal buildings until one year later. Finally, defendants alleged that the buildings, if sold in a commercially reasonable manner, had a value in excess of $10,000. The plaintiffs replied that they

"did not take possession of the collateral, nor did they do so pursuant to the provisions of ORS ch 79, nor otherwise pursuant to their rights as a secured party, but as a purchaser * * *."

In entering judgment for defendants on the pleadings, the court held that the security interest was valid and that defendants were foreclosed of all interest in the buildings. It further ordered that the buildings be sold and the proceeds be applied in complete satisfaction of the balance then owing on the note. The plaintiffs were left with no further claim or judgment against defendants.

Judgments on the pleadings are not favored and are allowable only "when the pleadings taken together affirmatively show that plaintiff has no cause of action against the defendant or when the defendant affirmatively alleges a complete defense which is admitted by the reply." *Salem Sand and Gravel Co. v. City of Salem,* 260 Or 630, 636, 492 P2d 271 (1971).

Defendants raised as an affirmative defense the failure of the plaintiffs to give notice of their acquisition of the collateral and to dispose of the collateral in a commercially reasonable manner. ORS 79.5040 provides in pertinent part:

"(1)  A secured party *after default* may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. * * *

"(2)  If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. * * *

"(3)  Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but *every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale. * * *" (Emphasis supplied).

In *All-States Leasing v. Ochs,* 42 Or App 319, 328-30, 600 P2d 899 (1979), we held that, when a secured party does not comply with ORS 79.5040:

"[A] presumption [arises] in favor of the debtor that the collateral was worth the amount of the outstanding debt at the time of default and the debtor is freed from any deficiency unless the creditor proves that the fair market value of the collateral was no greater than the sales price * * *.

"* * * * *

"* * * We so conclude because the secured party who has not conducted a commercially reasonable sale ought to have the burden of proving his right to a deficiency, and because the secured party has possession of the goods and is in a better position to adduce evidence of fair market value than is the debtor. * * *"

*See Ruchaber v. Short,* 53 Or App 58, 61-62, 630 P2d 915 (1981). By granting judgment on the pleadings, the trial court necessarily concluded that a default had occurred and that plaintiffs would not be able to overcome the presumption that the buildings were worth the amount of the outstanding debt at the time of the default. Those conclusions do not follow from the pleadings.

There is no allegation in these pleadings that either Gregroy or defendants were in default prior to the date Gregory transferred collateral to plaintiffs. Defendants' answer states only that, "on or about June 10, 1976, plaintiffs did take possession of the security set forth in the security agreement." It alleges nothing as to Gregory's ability or willingness to make payments on the promissory note. Plaintiffs' reply states that they agreed to purchase the metal buildings from Gregory and that they "did not take possession of the collateral, nor did they do so pursuant to the provisions of ORS ch 79, nor otherwise pursuant to their rights as a secured party, but as a purchaser * * *." In essence, neither side pleaded that Gregory was in default, and plaintiffs' reply suggests that he was not.

Even if default had been pleaded, the trial court's decision to foreclose plaintiffs from obtaining a deficiency judgment would have been based upon a rebuttable presumption whose application is not dispositive under these pleadings. That presumption, discussed in *All-States Leasing, supra,* is that the buildings were worth the amount of the outstanding debt at the time of the default. Even if this presumption were sufficient, standing alone, to permit the

trial court's conclusion, it did not stand alone here: The defendants alleged that the buildings were worth in excess of $10,000. The plaintiffs had paid $5,500 for them. The trial court presumed they were worth $11,169.48—the amount plaintiffs paid for them, plus the amount of the remaining debt. In effect, the trial court based its decision upon an evidentiary presumption that is disputed in the pleadings, and denied the plaintiffs an opportunity to put on evidence to overcome that presumption. It is elementary that issues of fact should not be tried on a motion for judgment on the pleadings. *Salem Sand and Gravel Co. v. City of Salem,* 260 Or at 636.

Reversed and remanded.