Argued and submitted January 19, reversed and remanded November 9, reconsideration denied December 9, 1983, petition for review denied February 8, 1984 (296 Or 411)

## BANCORP LEASING AND FINANCIAL CORP., dba Business Leasing Corp.,
*Appellant,*

*v.*

## BRUNNER, dba Tax Minimizers,
*Respondent.*

## (No. 29347; CA A24271)

672 P2d 357

Brian J. MacRitchie, Bend, argued the cause for appellant. With him on the brief were Neil R. Bryant, and Gray, Fancher, Holmes & Hurley, Bend.

James K. Belknap, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge,* and Van Hoomissen, Judge.

JOSEPH, C. J.

Van Hoomissen, J., dissenting.

---

* Joseph, C. J., *vice* Newman, J.

## JOSEPH, C. J.

Plaintiff appeals from a judgment denying its claim for breach of a lease agreement and allowing defendant's counterclaim for rescission of the agreement on the ground of failure of consideration. Plaintiff assigns error to (1) application of the doctrine of failure of consideration, (2) sustaining defendant's objection to testimony regarding the existence of an option to purchase and (3) sustaining defendant's objection to testimony comparing the lease payments to payments made under a traditional secured transaction. Only the first needs to be decided.

Defendant, a tax consultant, ordered a computer and related software for use in her tax practice from vendors in Virginia during a trip there and made a down payment on the equipment. When she returned to Oregon, she brought with her all the software she had ordered except the "tax package," which was essential to the maximum utility of the computer in her practice. Defendant contacted plaintiff to arrange financing for the equipment. When she received invoices for amounts due on the computer and the software, she requested plaintiff to send her a check for the amounts needed to pay for the equipment. A little later she requested plaintiff to remit to her a check in the amount of $2,641, reflecting the down payments made by her and her air fare in traveling to Virginia.

Thereafter, plaintiff's marketing representative, Berrie, visited defendant at her office for the purpose of concluding the transaction. At that time, defendant testified, she told Berrie that she had not yet received the tax software from the vendor. Berrie told defendant that her signature on the papers was necessary for the transaction to be completed and the invoices to be paid. Defendant signed a bill of sale, which states:

> "For value received, LORAINE I. BRUNNER dba TAX MINIMIZERS, (Seller), does hereby sell to BUSINESS LEASING CORP., (Buyer), an Oregon Corporation, the personal property listed below and by this reference made a part hereof:

> "One new Burroughs BRO Package System serial number 21349386 w/ BDX Processor 60KB, serial number 188457187, B80 Console Printer, serial number 18847766 and peripheral related equipment and software.

"Seller does hereby covenant and agree to and with said Buyer that it is the owner of the above-described personal property and that it has a good right to sell the same."

Defendant also signed an agreement to lease the computer and related software from plaintiff for a period of five years at $770 per month. Paragraph 18 of that agreement provides:

"18. WARRANTIES AND ACCEPTANCE. The Lessor has obtained the property herein leased based on specifications furnished by the Lessee. The lessor does not deal in property of this kind or otherwise by his *[sic]* occupation hold himself or his agents out as having knowledge or skill peculiar to the property involved in the transaction. The Lessee acknowledges that he *[sic]* has relied on his own skill and experience in selecting property suitable to the Lessee's particular needs or purposes and has neither relied upon the skill or judgment of the Lessor nor believes the Lessor or his agents to possess any special skill or judgment in the selection of property for the Lessee's particular purposes. Further, the Lessee has not notified the Lessor of the Lessee's particular needs in using the property. *The Lessor has made no representations or warranties, express or implied, to the Lessee concerning the property for the particular purposes of the Lessee.*

*"The Lessor assumes no responsibility for the condition, safeness, useability, [sic] repair or fitness of the property. The Lessor makes no representations or warranties, express or implied, including the warranty of merchantability, concerning the property or any individual characteristics or qualities of the property.*

"The Lessor hereby assigns without recourse to the Lessee all rights arising under any warranties applicable to the property provided by the manufacturer or any other person.

"By signing any schedule, Lessee states that it has fully accepted and taken possession of the property and acknowledges the property to be satisfactory and suitable for the purposes specified by Lessee, in full compliance with the term of this lease, and in good condition and repair. Lessee agrees that Lessor shall not be liable to Lessee for any representation, claim, breach of warranty, expense or loss directly or indirectly caused by any person, including Lessor, or in any way related to the property.

*"By initialing and dating this section, Lessee acknowledges that he has read the above paragraphs under section 18,*

*WARRANTIES AND ACCEPTANCE, and fully under-*
*stands its contents."* (Emphasis in original.)

Plaintiff then paid the vendors directly in full. Plaintiff also sent defendant a check for $2,641 to repay her expenses, as she had earlier requested.

Subsequently defendant received the tax software; however, it was not adaptable to her computer and would not function properly. Defendant notified plaintiff, but plaintiff declined to contact the supplier, stating that defendant would be in a better position to work out that matter. Defendant did not contact the supplier, and she refused to make any more payments under the lease.

Plaintiff brought this action, alleging that defendant had defaulted under the lease, that plaintiff had performed its obligations under the agreement and that defendant had failed to make lease payments after March 30, 1980. Plaintiff sought judgment for $43,890 (the entire amount of rent remaining to be paid during the lease term) together with interest. Defendant counterclaimed, alleging a failure of consideration because the tax software was of a different kind and quality than agreed on and was worthless to defendant. Defendant prayed for rescission of the lease and return of all monies previously paid by her as rent under the agreement. In its reply, plaintiff alleged that defendant was estopped to deny receipt of software agreed to under the agreement, because she had signed a document acknowledging that the computer and software were satisfactory.

At the conclusion of the trial, the court made these findings of fact: Defendant contacted plaintiff for financing the computer software. Defendant selected the equipment. Plaintiff paid for the equipment and leased it to defendant, who had executed a bill of sale before the lease that transferred her interests in the equipment to plaintiff. Both plaintiff's employe Berrie and defendant knew that she had not received all the software when she signed the document acknowledging receipt of and satisfaction with the equipment. The equipment that defendant received was different than either party believed it to be. Delivery of a different kind of software to defendant than that promised under the lease rendered the remainder of the equipment unusable. With the

possible exception of the breadth of the last two findings, all of them are supported by substantial evidence.[1]

The court concluded that defendant was entitled to rescission of the lease agreement and that "* * * both parties shall be returned to the position they would have been in but for the lease." The court ordered defendant to return all the equipment to plaintiff and plaintiff to refund to defendant all monies received under the agreement.[2]

On appeal, the parties agree that the issue is whether the agreement between the parties is a "true lease" or a secured transaction. Plaintiff contends that the doctrine of failure of consideration is inapplicable, because the consideration for her obligations was not the delivery of equipment but rather plaintiff's paying the suppliers for the equipment ordered by defendant in exchange for defendant's promise to make monthly payments on the equipment. Alternatively, plaintiff contends that, if we should find that the agreement is only a lease, there was not a total failure of consideration, because most of the equipment received by defendant, *i.e.*, the computer and all the software except the tax program, functioned properly. Defendant contends, however, that the agreement was only a lease and that plaintiff's failure to deliver the tax program constituted a material breach of the agreement, entitling her to rescission.

The principal thrust of plaintiff's brief is that the transaction was not a "true lease" but a "secured transaction." The difficulty with that line of analysis is that it appears to be purely[3] an afterthought. The complaint on

---

[1] Plaintiff's claim is legal; defendant's counterclaim for rescission is equitable. The decisive issue on this appeal is the propriety of the trial court's granting rescission. Therefore, our review is *de novo*. However, for the purposes of this decision, we accept the trial court's findings of fact.

[2] Apparently defendant was determined to be entitled to receive back all of the rent paid, without being required to restore the $2,641 in expense and down payment money that she had received from plaintiff.

[3] Or almost purely. At trial counsel for plaintiff repeatedly insisted in colloquy with the court that it made no difference whether the agreement were treated as a lease or as a "secure transaction." The failure from the outset on the part of plaintiff to adopt and follow a consistent theory is the root cause of the confusion in this case, for it certainly makes a lot of difference whether the agreement is what it appears from the writings to be, a lease or a sale and lease back, or a secured transaction. Just what the differences are is itself a very confused area of commercial law. *See* Kripke, Book Review, 37 Bus Law 723 (1982); Coogan "Is There a Difference Between a Long Term

which the case was tried, as well as the pleading of the counterclaim, contain only allegations relating to default under the lease as such.[4]

■   By the time the brief was written, plaintiff had substantially changed its theory. It now urges that we treat the case as one involving only a secured transaction. Not only is that an afterthought, but the terms of the lease[5] itself eliminate the possibility, for they completely rule out the acquisition of any equity in the property by the "lessee." ORS 71.2010(37); *see Peco, Inc. v. Hartbauer Tool & Die, Co.,* 262 Or 573, 500 P2d 708 (1972); *but see All-States Leasing v. Ochs,* 42 Or App 319, 600 P2d 899 (1979).[6] We therefore conclude that we have before us only an action on a lease with a counterclaim for rescission based on failure of consideration.

---

Lease and an Installment Sale of Personal Property?," 56 NYU Law Rev 1036 (1981); Leary "The Procrustean Bed of Finance Leasing," 56 NYU Law Rev 1061 (1981). Fortunately, we need not solve that problem in this case.

[4] We note that plaintiff's prayer for relief goes beyond what it is apparently entitled to under the lease but, even so, the prayer was a claim for defaulted *rent* only.

[5]   "6. LEASE. This is a non-cancellable contract of lease only and nothing herein or in any other document executed in conjunction herewith shall be construed as conveying or granting to Lessee any option to acquire any right, title or interest, legal or equitable, in or to the Property, other than use and possession, subject to and upon full compliance with the provisions hereof. * * *

"* * * * *

"11. SURRENDER. On the expiration or termination of this lease, Lessee shall, at its expense, assemble and return the Property unencumbered to Lessor's place of business, * * * in the same condition, appearance and functional order as received, reasonable wear excepted.

"* * * * *

"15. ENTIRE AGREEMENT: WAIVERS: SUCCESSORS. This lease and Schedules expressly referring hereto contain the entire agreement of the parties and shall not be qualified or supplemented by course of dealing. No waiver or modification by Lessor of any of the terms or conditions hereof shall be effective unless in writing signed by an officer of Lessor. * * *"

[6] At trial, plaintiff testified that an option to purchase was discussed with defendant prior to the signing of the lease. Defendant objected to that testimony on the ground that it sought to vary the terms of the written agreement, contrary to the parol evidence rule. The court received the evidence subject to the objection; however, it later sustained the objection. Plaintiff's regional marketing director testified that at the end of the lease term the equipment would have a market value of 10 percent of its original cost. He further testified that the discussion with defendant contemplated only that she could purchase the equipment for that amount, *i.e.,* its market value at the end of the lease. Nonetheless, the document signed by the parties after the discussion did not include an option to purchase, and we conclude that the parties never agreed on one as a part of the transaction.

Plaintiff does not dispute that, if the case involves a lease, the doctrine of failure of consideration can apply. It does, however, challenge whether there was a material failure of consideration between it and the defendant.

■ That issue brings us to the *de novo* review part of this appeal. The trial court decreed rescission on the basis of failure of consideration in the face of the language, quoted above, that put the risk of loss by reason of failure of or defect in the subject matter of the lease entirely on the lessee. Defendant did not receive all that she bargained to receive, but that bargain was with her suppliers. Any such bargain between *these* parties was expressly disclaimed in their documents. It is argued that plaintiff's agent's knowledge that defendant had not received the tax software when the lease was executed shifted the risk of a supplier's nonperformance from defendant to plaintiff. Plaintiff's complete lack of participation in the transaction between the suppliers and defendant (except for payment for the equipment, which was defendant's objective) negates such a result. Defendant knew that she had not received the tax software during all the negotiations; she knew plaintiff had absolutely no dealings with the supplier; she requested that plaintiff pay them; and she did not object when that payment was made by plaintiff. It would be anomalous to the point of being inequitable to place the risk on the lessor-financer who does not deal in goods of the kind involved, did not select the goods, has no knowledge concerning them and expressly disclaimed any such responsibility. The consideration passing between these parties was plaintiff's payment to the vendor and defendant's agreement to make lease payments. Plaintiff fully performed what it undertook to do. In effect, the trial court rewrote the agreement between the parties to reallocate the risk of the vendors' nonperformance, contrary to the terms of their express written agreement. There was not a failure of consideration between these parties, and the trial court erred in decreeing rescission.

The claim for rescission was defendant's only defense. Therefore, it might appear appropriate for us to send the case back with instructions to enter judgment for plaintiff.

However, given the terms of the agreement respecting remedies,[7] it is by no means clear what the trial court would have awarded plaintiff, if anything. Moreover, we think it appropriate that the trial court have the opportunity to consider the utility of ORCP 29[8] when the case is before it again.

Reversed and remanded.

---

[7] "13. REMEDIES. In Event of Default, Lessor shall have all remedies provided by law; and, without limiting the generality of the foregoing, Lessor, at its sole option, shall have the right at any time to exercise concurrently, or separately, any one or all of the following remedies:

"(a) Request Lessee to assemble the Property and make it available to Lessor * * * and put the Lessor in possession thereof on demand; and

"(b) Immediately and without legal proceedings or notice to Lessee, enter the premises, take possession of, remove and retain the Property or render it unusable * * *; and

"(c) Without notice to Lessee declare the entire amount of rent and other sums payable hereunder immediately due an payable; and

"(d) Without notice to Lessee terminate the leasing of any or all items of Property and be immediately entitled to the entire amount of rent and other sums payable hereunder; and

"(e) Sell all or part of the Property at private or public sale or re-lease all or part of the Property on such terms and payments as Lessor may arrange.

"The parties agree that any damages sustained by Lessor as a result of Lessee's default are to be determined by subtracting from the entire amount of rent and other sums payable hereunder, the net amount of any sales proceeds or any agreed value resulting from sale or releasing of the Property. The net amount of any sales proceeds or agreed value shall be determined by deducting from gross sales proceeds or gross agreed value Lessor's expenses of locating, repossessing, repair, appropriation, disposition and attorneys' fees. Lessee shall have no interest in or claim to any excess of such net proceeds over such entire amount of rent and other sums payable."

[8] ORCP 29 provides in relevant part:

"A. *Persons to be joined if feasible.* A person who is subject to service of process shall be joined as a party in the action if "(1) In that person's absence complete relief cannot be accorded among those already parties, * * *. If such person has not been so joined, the court shall order that person be made a party. * * *

"B. *Determination by court whenever joinder not feasible.* If a person as described in subsections (a)(1) and (2) of this rule cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudices can be lessened or avoided; third, whether a judgment rendered in

**VAN HOOMISSEN, J.,** dissenting.

This is an action on a lease with a counter-claim for rescission based on failure of consideration. On *de novo* review, I would modify the judgment to require defendant to refund the $2,641 in expense and down payment money she received from plaintiff, and, as modified, I would affirm.

The precise nature of the "transaction" between the parties is far from clear. Plaintiff's complaint alleged only a breach of a lease agreement by failure to make lease payments. Defendant admitted the lease agreement. Her counter-claim for rescission alleged that the hardware and software that was part of the lease agreement

"* * * was purchased by [plaintiff] and was to be provided to Defendant. [Plaintiff] knew the purpose for which the material was to be used and that the hardware would be of no value to defendant unless the software was as agreed. Defendant signed the lease agreement with the understanding that the software would be workable with the hardware, that, at that time, had not been received."

Defendant further alleged that when the software was received

"* * * it turned out to be of a different kind and quality as agreed upon and was of absolutely no value to defendant. In fact, the software material rendered the hardware unit of no value to Defendant."

The affidavit of plaintiff's agent Berrie in support of plaintiff's motion for summary judgment states in relevant part:

"* * * Defendant had not received all of the software at the time of signing the acceptance. *Defendant did not directly order or purchase the computer or software.* * * *" (Emphasis supplied.)

Plaintiff's summary judgment memorandum states in relevant part:

---

the person's absence will be adequate; fourth, whether plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

"* * * * *"

"* * * *Plaintiff* purchased the equipment from Burroughs Company and PSCI. * * *" (Emphasis supplied.)

The trial court denied plaintiff's motion for summary judgment:

"* * * The court found that there was a genuine issue of fact as to whether Defendant received what was promised by Plaintiff under the lease and that, if she did not receive what was contracted for, she would have a defense to Plaintiff's complaint."

Plaintiff then filed an amended reply alleging that defendant was estopped to deny receipt of the equipment described in the lease agreement because she had signed documents prepared by plaintiff stating that she *had* received the equipment. Plaintiff asked for dismissal of defendant's counter-claim for rescission and for judgment. In its trial memorandum, plaintiff argued that:

"* * * The agreement entered into between plaintiff and defendant was a secured transaction.

"* * * * *

"The equipment was purchased by plaintiff specifically for the defendant's use and was delivered directly to defendant. * * *"

The trial court found that plaintiff knew defendant had not received the software described in the agreement when she signed the documents prepared by plaintiff, and that the equipment she received later "was different than either party believed it to be." It concluded that, under the circumstances, this constituted a complete failure of consideration entitling defendant to rescind.

At trial, therefore, plaintiff's theory was that this was a secured transaction, or, in the alternative, that defendant was estopped to deny she had received the subject matter of the lease. Defendant's theory was that the arrangement between the parties "was never considered by [defendant], other than a lease. * * * Our position simply is, that the Plaintiff, here, has entered into a Lease Agreement." Plaintiff made no objection to defendant's theory that this was nothing more than a simple lease and that plaintiff breached the agreement by failing to provide the equipment described in the lease documents.

At trial, plaintiff's agent Berrie testified in relevant part:

"Q At the time of this transaction, you were Marketing Representative for Bancorp; is that right?

"A Right.

"Q And Bancorp did, in fact, purchase this equipment with checks to both Burroughs and PSCI. That's a fact; isn't it?

"A That's a fact.

"Q And, as far as you know, there was no Bill of Sale from these two manufacturers, either to Bancorp or to Mrs. Brunner; is that a fair statement?

"A As far as I knew.

"Q But you did have her execute, on that day that you arrived at her office, a Bill of Sale?

"A Yes.

"Q It would be fair to say that the purpose of that is to assure that Bancorp was owner of the equipment, that they intended to lease to Mrs. Brunner?

"A That's fair.

"Q And, as you stated under oath here a few minutes ago, you always intended to treat this as a lease; this transaction?

"A Yes.

"Q That's a fair statement?

"A That's a fair statement.

"* * * * *

"Q Then, on page eleven, starting at line six, I'll ask you if you remember this — these questions and these answers. Question: 'One of the documents that your attorney introduced, Mr. Berrie, stated that equipment was received and it was satisfactory. Why would Bancorp ask her to sign such a document?' Answer: 'Because we had no use for the equipment if the user isn't satisfied with it. We, obviously, have to have the user satisfied with it to make it viable.' Question: 'You said the user has to be satisfied with it to make it viable. And, if it turns out that she has — the equipment has been delivered and isn't that good, you wouldn't ask her to sign such an agreement, would you?' Answer: 'No.'

"Q Do you recall those questions and those answers?

"A Yes.

"Q And on page twelve this question and this answer. Question: 'Would it be fair to assume that the reason Bancorp has somebody sign the document that they're satisfied with, because you wouldn't enter into a lease with them if they weren't satisfied with it?' Answer: 'Yes.'

"Q Do you recall that question and that answer?

"A Yes.

"Q Then, on page eighteen of the deposition this question and this answer, Mr. Berrie. Question: 'If somebody at Bancorp had knowledge that the software equipment had not been received, would it be proper, normal procedure, rather, to have Mrs. Brunner sign for it?' Answer: 'I don't believe so.'

"Q Do you recall that question and that answer?

"A Yes."

At trial, defendant testified in relevant part:

"Q Your understanding of the transaction with Bancorp, Mrs. Brunner, you stated, was a lease situation. Who was to provide the money to the manufacturers of the computer?

"A Bancorp Leasing was buying the equipment.

"Q How about the software?

"A They bought the software, too.

"Q And, did the invoices actually get sent to you?

"A Yes, they did.

"Q And, when you received those invoices, what did you do with them? I'll hand you Plaintiff's Exhibit Number 3.

"A I sent them to Bancorp for their payment.

"Q Was that the arrangement between you and Bancorp?

"A Okay. I really didn't know, exactly, how that was going to be handled. I knew that they were purchasing the equipment, and I was leasing the equipment, but because of the invoices coming to me, I don't knew whether they wanted me to submit my checks, or whether they would submit the checks directly. So, it was the start of tax season. I didn't have everything going yet.

"Q They prepared the papers that were presented to you, on the 28th; did they not?

"A Yes, they did.

"Q You never received a Bill of Sale, from PSCI, or from Bancorp?

"A  No. The only thing I had was invoices that I sent to Bancorp.

"Q  This Bill of Sale, that you signed, was it prepared by Bancorp; Plaintiff's Exhibit Number 12?

"A  Yes, it is.

"Q  This is one of the documents they asked you to sign, to complete the lease transaction?

"A  That's right."

Plaintiff's primary theory at trial was that this was a secured transaction. The trial court had difficulty understanding that theory. The following colloquy occurred near the end of the trial:

"THE COURT: Let's talk about that for a second.

"Let's suppose that I find that the lease is a secured transaction. Does that finding necessarily require that the transaction be treated as a sale rather than a lease?

"MR. MacRITCHIE: Well, no, I don't believe so. I think the language, in that case, says the UCC concepts are applicable to a situation like this, but there is not necessarily — or there is not necessarily to a finding that the title is transferred or that there is a technical sale.

"THE COURT: Give me a second, because I'm having difficulty articulating what I am thinking.

"In order to prevail, in this matter, you're going to have to prove that, in fact, your Client did not lease the property to the Defendant; true?

"MR. MacRITCHIE: I think our position is two-fold.

"THE COURT: Respond to that, if you will.

"MR. MacRITCHIE: Respond to just the first?

"THE COURT: Well, respond to my question, in any way you want.

"MR. MacRITCHIE: Okay. I think that if you find that it's a secure transaction, I think that you will also find it's stipulated that there has been a default on the payment obligations, and the concepts of the UCC apply and we're entitled to judgment.

"THE COURT: That's what I'm struggling with, because it seems to me that I can find this to be a secure transaction, but that doesn't determine whether or not the difference

interposed, by the Defendant, prevails. We're not really talking about the recapture of the collateral here. What we're talking about is whether there was, in fact, a lease agreement whereby the Plaintiffs agreed to lease a designated piece of personal property.

"MR. MacRITCHIE: Well, I really think that there are two different issues. One is if it's a secure transaction, then the rights and liabilities from the UCC apply. And, in this case, the Plaintiff's, then, would be the secure party to the Defendants, the debtor. The debtor is in default, and the secured party is — should recover. I would analogize that situation to say, a straight loan, to a bank, to a debtor, for a Pontiac car, and the debtor went out and bought what they thought was a Pontiac car, from a car dealer, when, in fact, it was a Chevrolet —

"THE COURT: What I'm having difficulty understanding is why it makes any difference if it's a secured transaction, whether it's a lease or a sale, to the disposition of this case. Because the disposition of the collateral is not at issue.

"Can you enlighten me why it makes a difference?

"MR. MacRITCHIE: I didn't think it made a difference how you label it, lease and sale rights and liabilities of the parties. Those flow from the determination of whether or not it's a secure transaction, and entitled to be treated under the UCC. I mean, I don't care what we call it.

"THE COURT: Okay. Maybe I'm not communicating very well. Let's go through it again.

"MR. MacRITCHIE: Okay.

"THE COURT: Let's assume, without deciding, that what this case was was a secure transaction. What difference does that make in defining the Defendant's counterclaim?

"MR. MacRITCHIE: Well, I'm not sure I quite understand the question, but, my point is, I don't think it makes any difference. I think we've got default on secure obligations.

"THE COURT: If it doesn't make any difference, why is this testimony, that would be offered, to prove one of the factors in the Allstate case, to show that it's a secure transaction?

"MR. MacRITCHIE: I think it's important to show whether it's a secure transaction. I think there's a lot of factors listed, in this case, and I think this is just one. I don't think it's just limited to that case.

"THE COURT: I'm going to sustain the objection. I don't think it's appropriate, in this case."

At the conclusion of the trial, the trial court stated:

"This court makes the following findings of the Fact and Conclusions of Law:

"Defendant contacted Plaintiff regarding financing for computer equipment that she sought to be purchased for her business and other businesses. She selected the particular equipment that was to be purchased. The Defendant agreed to finance the purchase and pay for the equipment, and agreed further to lease it back to the Plaintiff —

"MR. BRYANT: Excuse me, to the Defendant? You mean the —

THE COURT: Let me say that again. I'm sorry.

"The Defendant selected the equipment, the Plaintiff agreed to pay for the equipment and lease it to the Defendant.

"Is that better, gentlemen?

"MR. BRYANT: Yes. Thank you.

"THE COURT: Thank you for interrupting me.

"Defendant executed a bill of sale to the Plaintiff and the Plaintiff leased it back to her. That resulted in ownership of the property unvesting [sic] in the Plaintiff. The lease was materially breached because the equipment was different than what either party believed it to be, and the defect was material to the parties agreement because it rendered the remainder of the equipment unusable for the purpose that the parties contemplated.

"Based upon these findings, I conclude, regarding the lease, that there has been a failure of consideration and parties should be returned to the status quo that existed prior to their agreement.

"Mr. Belknap, you may draw an appropriate decree, in this matter, providing for return of all of the computer equipment to the Plaintiff and return, by the Plaintiff to the Defendant, of the monies that she has paid.

"Mr. Bryant, I'm hesitant to make any conclusions of law concerning whether there was a sale from the manufacturer to the Defendant, and then a second sale from the Defendant to the Plaintiff, and then a lease, or whether there was a sale directly from the manufacturer to the Plaintiff, because that decision is not material to my findings in this case. Once I

determined the title, vested the Plaintiff, and what was being framed in the pleadings here is the lease agreement itself. What I'm saying is, that if I went beyond those findings, I would be making conclusions of law based upon issues that haven't been plead. However, based upon the evidence I've heard today, I did make specific findings as to the facts that occurred. The legal impact of those facts would have to be left to further litigation, if any.

"Mr. Belknap, do you have any questions about the decree?

"MR. BELKNAP: No, sir.

"THE COURT: Mr. Bryant?

"MR. BRYANT: No, sir.

"THE COURT: Thank you, gentlemen, we'll be in recess.

"(Let the record reflect, an off-the-record discussion was then had.)

"THE COURT: Back on the record for a second.

"I make further findings of fact that the Defendant's testimony concerning the knowledge that the Plaintiff had when the acceptance was signed is credible and, based upon that finding, the Defense of Estoppel cannot prevail because both parties recognized that all of the property had not yet been received."

Plaintiff's brief summarizes its argument on appeal:

"The doctrine of failure of consideration does not apply to the case at bar. The correct analysis is to determine whether the agreement between Plaintiff and Defendant was a 'true lease' or a secure transaction. The agreement here is a secure transaction * * *."

My objection to the majority's result is one of appellate procedure. Plaintiff's primary theory below was that this was a secured transaction. Plaintiff did not prevail on that theory. We have rejected it as well.[1] Nevertheless, the majority would now let plaintiff prevail and would reverse a trial court whose decision is defensible on the merits given plaintiff's theory at trial and on appeal.

Some of the "facts" relied on by the majority are disputed. To illustrate, the majority states that defendant's

---

[1] I agree with the majority that the terms of the lease itself negate any conclusion that this is a secured transaction.

"bargain was with her suppliers." (65 Or App at 293.) The statements of plaintiff's agent Berrie that "[d]efendant did not directly order or purchase the computer or software," that "[p]laintiff purchased the equipment from Burroughs Company and PSCI" and that plaintiff would not have asked defendant to sign the lease agreement if she was not satisfied with the equipment, tell me that the result reached by the trial judge was, as I independently read this record, correct (with the modification I have suggested to return the parties to the *status quo ante)*.