Argued October 7, affirmed October 20, 1965

# REIF *v.* BOTZ
### 406 P. 2d 907

*Robert A. Leedy,* Portland, argued the cause for appellant. With him on the brief were Barzee, Leedy & Tassock, Portland.

*Maurice Engelgau,* Coquille, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Perry, Denecke, Lusk and Schwab, Justices.

SCHWAB, J. (Pro Tempore)

The plaintiff, as administratrix of the estate of Edward C. Botz, deceased, sought to recover from the defendant, John Botz, nephew of the deceased, $3,100 which she contended Edward had loaned to John. The trial court found in favor of the defendant, who admitted receipt of the money but claimed that it was a gift rather than a loan. The case was tried in the circuit court without intervention of a jury and on this appeal from the final order of the trial court denominated "Decree and Judgment," the plaintiff makes but one assignment of error: "Upon the record, the court erred in finding that sums of money delivered to defendant by plaintiff's intestate were gifts rather than loans and in denying plaintiff relief with respect thereto."

The complaint is captioned "Complaint for Declaratory Judgment" and makes the following pertinent recitals. (1) During his lifetime Edward Botz, deceased, loaned a total of $3,100 to John Botz during a period between 1957 and January of 1960. (2) That defendant agreed with the decedent that he would repay the $3,100 commencing in the fall of 1965. (3) Plaintiff is unable to allege with greater particularity the dates or rate of repayment. (4) Defendant asserts that the moneys advanced were gifts rather than loans. There follows a prayer for relief in the form of a declaration by the court establishing a legal obligation on the part

of the defendant to repay the $3,100 to the estate with interest from the date of each advance and for a further declaration determining the amounts and dates of repayment.

An examination of the issues leads us to the conclusion that these proceedings more properly should have been in the form of an action at law to recover money loaned. In view of the fact that both parties and the trial court acquiesced in treating these proceedings as under the declaratory judgment statutes, we pass the point without further comment because, treating this case either as an action at law for money loaned or as a declaratory judgment proceeding, the result is the same.

■ The declaratory judgment statutes read: "When a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other actions at law or suits in equity in the court in which the proceeding is pending." ORS 28.090. This proceeding being legal in nature, the defendant was entitled to a resolution of the questions of fact as in an action at law. See specially concurring opinion on rehearing in *Oregon Farm Bureau v. Thompson*, 235 Or 162, 199, 378 P2d 563, 384 P2d 182.

Since the findings of a trial judge sitting as a trier of the facts in an action at law are entitled to the same finality as the verdict of a jury, his findings must be sustained if there is any evidence in the record to support them. We measure the evidence against this standard.

Edward Botz was 68 years old when he died in August of 1963. He was unmarried and apparently in

reasonably good financial circumstances. He was on good terms with his immediate family which consisted of his brother Bill and Bill's wife, the parents of John Botz, the defendant; his sister, Gertrude Reif and her children, as well as the children of a deceased sister. He visited them from time to time, occasionally staying in their homes during such visits. During the years 1957 to 1963 his nephew, John Botz, the defendant, was intermittently attending college. He graduated in June of 1959, started teaching, and later went back to school to work for a master's degree. At the time of the trial he was still working towards the degree at Humboldt State College in Arcadia, California, having added to his financial burdens by acquiring a family along the way.

The parties agree that during the period commencing in 1957 and ending in January, 1960, Edward Botz turned over to the defendant the sum of $3,100. The only evidence tending to indicate that these transfers were loans was a letter from the defendant to the deceased dated January 7, 1960, which the plaintiff administratrix found among the decedent's papers after his death, and a letter which the defendant wrote to her in January of 1964. The 1960 letter from John Botz to the decedent contained the following:

"I borrowed the following from you.

"$1900—1957-1958
   600—Spring 1959
   600—Jan. 1960

"$3100—Total."

The 1964 letter from John Botz to the plaintiff was

sent in response to a letter from her enclosing a copy of the 1960 letter. It read as follows:

"Dear Gertrude,

"About the money agreement that Uncle Ed and I had worked out.

"Any money I could collect from Myron Fleiser was considered as mine. I think Ed had pretty well given up on ever getting his money back from Myron. Myron agreed to pay me $200 a month through the school year 1958-1959 at which time I would graduate. As you can see this lasted until Nov. At this time I figured on quitting school and going to work for awhile, for I figured I owed Ed too much, but he thought it better that I continue on. So I have borrowed a total of $3100 from Ed.

"Ed and I examined my financial picture, the last time he visited—Spring 1963. Because of the continuous return to summer school, which pretty well takes care of any extra I make through the year, it was decided that we would work out repaying this loan immediately after I received my Masters Degree. (probably in the Fall of 1965). I would like to try repaying this before then, but at the present time I don't know when I could start.

"His last remarks on the subject was that he wasn't too concerned if I was ever able to pay him back, but he felt it would be fairer to others in relation, to get the sum down some, as he had financially helped me more than others.

"Last summer I was lucky enough to receive a National Science Foundation Grant to Humboldt State College. I have applied for another one this year—the results will be known sometime in April. If I should get this grant, repayment of this loan to Ed's estate could be arranged next fall sometime. I certainly couldn't repay the whole balance at that time, but I could get a start.

"I understand your position as administrator of the estate, Gertrude, and appreciate the chance to explain the situation.

"Sincerely yours,
"John"

All of the other evidence indicated gifts rather than loans. Bill Botz, the brother of the deceased and father of the defendant, testified that in June of 1963, when the deceased was at Bill's home discussing a fishing trip on the Rogue, the deceased told him that he had more money than he needed, that John owed him nothing and that he wanted John to finish school. Iola Botz, the mother of John, testified with reference to a conversation which allegedly took place in June of 1963, as follows:

"Q What was the conversation with the decedent, Mrs. Botz, as nearly as you remember? What was said by whom?

"A Well, I expressed my gratitude for all he had done for all of our families, all of us, and especially the help he had given to John.

"Q What was his response to that?

"A Well, he said, I have plenty of money. I don't want to be paid back. I have plenty, I don't want to be paid back. I want John to go ahead and get his Master's. He made that quite plain those were his wishes."

On both direct and cross-examination the administratrix herself testified that she knew that her brother, Ed, was anxious to see his nephews and nieces go through school, that he had given John money, and that she could not remember him saying anything about it being a loan. In an equivocal fashion, she denied that the deceased had ever offered to "give" her children money for school. But a letter dated

May 14, 1964 from her to the father of the defendant contains the following:

> "Ed offered to help put our girls to [sic] college—but as I told him—so long as we were able—why should he put out money—he could use the money to better his living conditions."

The defendant himself testified that at the time he used the word "borrowed" in his letter of 1960 he did not fully understand its legal significance. His credibility was for the trier of fact. The substance of his testimony was that he felt morally indebted to his uncle and wanted to repay the money but that his uncle was not too concerned whether he did or not. This was consistent with that portion of defendant's 1964 letter which read: "His last remarks on the subject was [sic] that he wasn't too concerned if I was ever able to pay him back, but he felt it would be fairer to others in relation, to get the sum down some, as he had financially helped me more than others." No canceled checks or other memoranda of the financial transactions between the deceased and the defendant were found among the decedent's papers.

The trial judge, in his oral opinion immediately after conclusion of the closing arguments, stated:

> "But in the absence, after some six years, September 4, 1963, and the first monies were advanced in 1957, nothing whatsoever to indicate any intent to collect, the Court is unable to arrive at any contract for the parties that they did not make themselves.
>
> "This was a man of some means, able to help all of his family, apparently able to acquire money, apparently willing to spend it freely where his natural indications—natural affections would lie. The record portrays a generous man, who gave wherever he felt morally impelled.

"Quite probably, as the amount of his nephew's advances became out of line, he would have misgivings as to the fairness to the others, as is indicated in Exhibit C in the way of an admission by the nephew, but the Court has no doubt whatsoever what the decedent would testify, if he were here on the stand, I am convinced that he would have said, It is a gift.

"The Court is convinced that the use of the word 'borrow' by the nephew is nothing more or less than lip service to his uncle to let him characterize the matter in any way he wished.

"It may very well have been, and probably was, the intention of John Botz to repay, if his uncle at some subsequent time wanted it repaid.

"There was no demand, no contract, and it is the opinion of the Court none was intended, and the most that was ever intended was to start looking into the matter to see if he was being unfair to his relatives. This he could have done in many ways and apparently did not.

"I find, therefore, there is no legal obligation upon the defendant to pay the estate of the decedent the sum of $3100 or any other amount."

■ The main thrust of plaintiff's brief and the authorities cited therein concerns whether the burden of proof rests with the donor or donee in situations involving alleged gifts. Such an inquiry by this court is proper only on trial de novo in equity or on a review of instructions to a jury. On appeal in an action at law from findings of fact by a trial court sitting without a jury, this court cannot again place the evidence on the scales to see which side preponderates. We must confine ourselves to a search of the record for some evidence to support the findings. If we so find, as we do in this case, those findings cannot be disturbed.

Affirmed.