CHAPIN,
*Respondent,*
*v.*
NORTHWESTERN PACIFIC INDEMNITY CO.,
*Appellant.*

CHAPIN,
*Respondent,*
*v.*
NORTHWESTERN PACIFIC INDEMNITY CO.,
*Appellant.*

(No. 76-0916, No. 76-0921, CA 16003)

619 P2d 300

William G. Wheatley, Eugene, argued the cause and filed the briefs for appellants. With him on the briefs was Jaqua & Wheatley, P.C., Eugene.

John B. Arnold, Eugene, argued the cause and filed the brief for respondents. With him on the brief were Arthur C. Johnson and Johnson, Harrang, Swanson & Long, Eugene.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

These two cases were consolidated for trial and appeal. They are law actions brought under ORS 743.783[1] to collect from the defendant insurance company the unpaid balances of judgments previously obtained in other litigation against John Brambora. The plaintiffs contend that Brambora was an additional insured under the omnibus provision of an insurance policy issued by the defendant to Milo F. Gubrud. The trial court found for the plaintiffs. The defendant has appealed. We affirm.

On January 13, 1969, Gubrud, under a "lease option agreement," transferred possession of a used 1959 Ford dump truck to Brambora. The agreement provided that Brambora was to pay Gubrud the sum of $250 each month for a period of ten months. At the end of the ten-month period Brambora was to have the option of purchasing the truck upon the payment of an additional $2,000. Brambora purchased a comprehensive liability automobile insurance policy from Aetna Life & Casualty with limits of $100,000.

On July 11, 1969, Brambora was delinquent in his monthly payments to Gubrud. On that date, through the efforts of Gubrud, the dump truck was leased to the United States government. The lease payments were to be applied first to Brambora's delinquent payments to Gubrud, and then directly to Brambora.

On July 18, 1969, one of the plaintiffs, Kenneth R. Chapin, was severely injured while driving the truck as an

---

[1] ORS 743.783 provides:

"A policy of insurance against loss or damage resulting from accident to or injury suffered by an employe or other person and for which the person insured is liable, or against loss or damage to property caused by horses or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall contain within such policy a provision substantially as follows: 'Bankruptcy or insolvency of the insured shall not relieve the insurer of any of its obligations hereunder. If any person or his legal representative shall obtain final judgment against the insured because of any such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within 30 days after it is rendered, then such person or his legal representatives may proceed against the insurer to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto.' "

employe of the United States government. On April 7, 1970, Kenneth R. Chapin, through his guardian, filed a personal injury action against Gubrud and Brambora. The complaint alleged the defendants had negligently failed to repair and maintain the brakes on the truck. The defendant here, Northwestern Pacific, undertook the defense of Gubrud. Aetna undertook the defense of Brambora.[2]

On June 9, 1971, plaintiff Delwyn Chapin filed a complaint against Gubrud and Brambora seeking damages for loss of consortium.

On October 17, 1971, Kenneth R. Chapin's trial began. The defendant here, Northwestern Pacific, on behalf of Gubrud, settled both of the Chapin cases for a total sum of $35,000. Aetna, on behalf of Brambora, refused to settle both of the cases for its policy limits of $100,000. On October 26, 1971, Kenneth R. Chapin received a jury verdict against Brambora for the sum of $239,431.44. The sum of $17,500 — being one-half of the Gubrud settlement — was deducted from the judgment entered.

On December 29, 1972, Aetna, on behalf of Brambora, paid the plaintiff its policy limits of $100,000 plus costs and interest.

On January 24, 1974, the consortium case of Delwyn Chapin was tried to the court without a jury. Damages were found to be $110,000. Judgment was entered against Brambora for the sum of $92,500. (The sum of $17,500 as one-half of the Gubrud settlement in October, 1971, was deducted.)[3]

On February 25, 1974, Brambora assigned to the plaintiffs all of the claims he had against both Aetna and the defendant, Northwestern Pacific.

---

[2] In January, 1971, there was correspondence between Aetna and the attorney it had employed to defend Brambora to the effect that they thought Brambora might be an additional insured under Gubrud's policy with Northwestern Pacific. They did not tender the defense to Northwestern Pacific because Northwestern Pacific might have accepted, and Aetna did not want to "lose control" of the case.

[3] On December 14, 1973, a different lawyer, on behalf of Brambora, tendered the defense of the consortium case to defendant Northwestern Pacific, claiming that Brambora was an "additional insured" under the Gubrud policy. The tender was refused.

In October, 1974, both plaintiffs filed an action against Aetna under the Brambora assignment. They prayed for the payment of the unsatisfied judgments — $136,303.25 in the Kenneth R. Chapin case, and $92,500 in the Delwyn Chapin case. The complaint alleged that Aetna was guilty of bad faith for failure to settle the previous cases within the policy limits. On June 9, 1975, Aetna settled with the Chapins for $185,000 plus $15,000 attorney fees.

On February 25, 1976, the plaintiffs filed their original complaints in these cases. Kenneth Chapin prayed for the payment of the balance of his judgment against Brambora in the sum of $43,988.25. Delwyn Chapin prayed for the payment of the balance of her judgment against Brambora in the sum of $28,111.03. Both plaintiffs claimed that Brambora was covered as "additional insured" under the omnibus clause[4] of the policy issued by defendant Northwestern Pacific to Gubrud.

On September 21, 1979, trial on these consolidated cases was held before the court without a jury. The trial court found against the defendant and made detailed findings of fact. The trial court entered a judgment for Kenneth Chapin in the sum of $36,888.97 and a judgment for Delwyn Chapin in the sum of $28,111.03.[5]

■ The defendant has appealed to this court. Its first three assignments of error are that the trial court erred in "determining that the defendant failed to prove the allegations" of certain of its affirmative defenses. These affirmative defenses alleged, generally, failure to give notice of the

---

[4] "Each of the following is an insured under this insurance to the extent set forth below:

"(a) the named insured:

"(b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the named insured;

"(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, * * * ."

[5] The two judgments total $65,000 and it is presumed to be the balance of the $100,000 coverage available after the previous payment of $35,000.

accident, waiver, and estoppel. The trial court in effect held that the defendant did not carry its burden of proof. "On appeal in an action at law from findings of fact by a trial court sitting without a jury, this court cannot again place the evidence on the scales to see which side preponderates." *Reif v. Botz,* 241 Or 489, 496, 406 P2d 907 (1965). There was no error.

The defendant's fourth assignment of error is:

"The trial court erred in finding that Milo F. Gubrud was the owner of the 1959 Ford Truck at the time of the automobile accident in question."

It is the defendant's contention that the agreement of January 13, 1969, wherein Gubrud transferred possession of the 1959 Ford dump truck to Brambora, was not a "lease option" agreement but was a "conditional sales" agreement. The defendant reasons that if the dump truck was transferred to Brambora under a conditional sales contract, then it would not be an "owned" vehicle of Gubrud under the omnibus clause of the policy written by the defendant.[6]

The construction of a contract is a question of law for the court. *Quillin v. Peloquin,* 237 Or 343, 346, 391 P2d 603 (1964). *All-States Leasing v. Ochs,* 42 Or App 319, 600 P2d 899 (1979).[7] Whether the agreement was a lease or a conditional sales contract depends upon the intention of the parties in each individual case.

---

[6] The defendant in its brief at 35-36 says in part:

"Although there are no Oregon cases on point, it is a well established rule of law that a conditional sales vendee is not within the coverage of the omnibus clause of an automobile insurance policy issued to the vendor. * * * *United Fire & Casualty Co. v. Perez,* 161 Col. 31, 419 P.2d 663 (1966); *Beatty v. Western Pacific Insurance Co.,* 74 Wash. 2d 530, 445 P.2d 325 (1968); *Maryland Casualty v. American Family Insurance Group of Madison, Wisconsin,* 199 Kan. 373, 429 P.2d 931 (1967). * * * Couch on Insurance, 2d, Section 45: 383."

* * * * * *

We find it unnecessary to rule on the merits of this position.

[7] In *All-States Leasing v. Ochs,* 42 Or App 319, 600 P2d 899 (1979), this court spoke in terms of whether the lease is a "pure" lease or one intended as security. We think that the law of that case applies directly to this case. A conditional sales contract is an instrument intended as security. R. Summers and S. White, Uniform Commercial Code 758 (1972).

" * * * Even though the determination is made on a case by case basis, the presence of certain factors can be indicative, including, but not limited to: (1) whether the lessee is given an option to purchase the equipment, and, if so, whether the option price is nominal, ORS 71.2010(37); (2) whether the lessee acquires any equity in the equipment; (3) whether the lessee is required to bear the entire risk of loss; or (4) pay all charges and taxes imposed on ownership; (5) whether there is a provision for acceleration of rent payments; and (6) whether the property was purchased specifically for lease to this lessee." (Footnote omitted) *All-States Leasing v. Ochs, supra,* 42 Or App at 323-24.

Our first consideration is to determine if the option price of $2,000 is nominal. The agreement of January 13, 1969, provided in part:

"As further consideration of the rental payments herein provided, the Lessors [Gubrud] give the Lessees [Brambora] an irrevocable first option as follows:

To Purchase the described equipment at an initial purchase price of $4250.00 after 10 monthly installment[s] of $250.00 have been made or $2500.00 which will be used as a down payment. The balance shall be settled by a sale contract for $2000.00 provideing [sic] payments of not less tha[n] $200.00 per month * * * and with installment[s] starting not later than 20 days from the time the Lease option is exercised."[8]

*Peco, Inc. v. Hartbauer Tool & Die Co.,* 262 Or 573, 576, 500 P2d 708 (1972), holds that the best test to determine if the option price is nominal is to compare the option price with the market value of the equipment as of the time that the option is to be exercised. It is impossible in this case to literally comply with that test. Brambora could not have exercised the option until September 9th. The dump truck had been destroyed approximately two months before on July 18th. Under the collision provision of the policy, Aetna, Brambora's insurance carrier, had paid Gubrud and Brambora, jointly, the net sum of $2,100. Gubrud received the salvage. He valued it at $500. However, because the amount of the deductible is not in the record we cannot with certainty determine the fair market value of the truck

---

[8] The omitted phrase reads " * * * and to include service [c]harges at 8% discount * * * ." We are befuddled by the meaning of this phrase, but find that its interpretation is not necessary to this opinion.

at the time of the accident. There is no evidence in the record as to what the fair market value of the truck would have been on September 9th if there had been no accident. Nonetheless, the initial purchase price was $4,250, and the option price is 48.9% of that amount. We hold that the option price of $2,000 was not nominal. *See In re Alpha Creamery Co., Inc.,* 4 UCC Rep 794, 797, Bank No 29, 264-B (WD Mich 1967) (option price 32% of list price; Held: not nominal); Annotation, 76 ALR 3rd 11 (1977).

Under the remaining factors cited by the court in *All-States Leasing, supra,* we find:

(2) There is no evidence as to what the fair market value of the truck would have been on September 9th, and, therefore, it is impossible to say if Brambora was acquiring any equity.

(3) Under the agreement Brambora was not required to bear the entire risk of loss. He was required to carry only $250 of collision insurance.[9]

(4) The agreement is silent as to charges and taxes imposed on ownership.

(5) There was no provision in the agreement for the acceleration of the rent payments.

(6) The truck was not purchased specifically by Gubrud to lease to Brambora.

The intention of Gubrud and Brambora as to the nature of the contract is most accurately expressed by the phrase "The balance shall be settled by a sale contract for $2000.00 provideing [sic] payments of not less tha[n] $200.00 per month * * *." This clearly indicates that the parties entered into a lease to be followed by a conditional sales contract in the event the option was exercised. To hold otherwise would mean that the parties entered into a conditional sales contract to be converted into a second conditional sales contract when the option was exercised.

The agreement between Gubrud and Brambora of January 13, 1969, was a lease and not a conditional sales

---

[9] The sum of $250 may be a typographical error. There is nothing in the record to support or deny the figure.

contract. It follows that the trial court did not err in finding that Gubrud was the owner of the truck at the time of the accident in question.

■ The defendant's fifth and last assignment of error is that the trial court erred in finding that Brambora was "using" the truck at the time of the accident so as to make him an omnibus insured. The policy defines as an insured "any * * * person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, * * *." The words "use" and "using" are generally held to be broader than the terms "driving" and "operating." *Signal Ins. Co. v. Mission Ins. Co.,* 254 Or 603, 462 P2d 669 (1969); *Oregon Mutual Ins. v. Hollopeter,* 251 Or 619, 623, 447 P2d 391 (1968). This is apparent from the omnibus clause itself. The terms "using" and "actual use" are ambiguous, and their meanings must be resolved against the insurance company and in favor of coverage. *Chalmers v. Oregon Auto Ins. Co.,* 262 Or 504, 513, 500 P2d 258 (1972). The truck was leased by Brambora to the United States government at the time of the accident.[10] The payments were to be made first to bring Brambora's delinquent payments to Gubrud current, and then directly to Brambora. The lease was for the direct benefit of Brambora. We hold that Brambora was using the truck at the time of the accident. There is no question that the use was with the express permission of Gubrud. The trial court did not commit error.

Affirmed.

---

[10] The lease was arranged by a shell corporation, Orco, Inc., controlled by Gubrud. The parties' stipulated facts state that Orco appears on the lease as a lessor. The "lease," however, is actually a government order form for supplies or services. The form lists Orco merely as the contractor (supplier) and the Federal Highway Administration as the "consignee." It is probably most accurate to characterize the relationship as a lease of the truck by Brambora as lessor through his agent, Orco, to the government as lessee. In any event, *the parties* agree that Brambora leased the truck to the government.