**COMPANIA TRANSATLANTICA ESPANOLA, S.A., Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, National Union Fire Insurance Company of Pittsburgh, Pa., and Fireman's Fund Indemnity Corporation, Defendants.**

No. 88 Civ. 6130 (JES).

United States District Court,
S.D. New York.

Oct. 15, 1990.

---

Martocci & Burns, New York City (Michael D. Martocci, Sam D. Delich, pro hac vice, of counsel), for plaintiff.

Mound, Cotton & Wollan, New York City (Stuart Cotton, Philip C. Silverberg, of counsel), for defendant Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

Speyer & Perlberg, New York City (John M. Speyer, Jodi Goodelman, of counsel), for defendant Hartford Acc. & Indem. Co.

Lester Schwab Katz & Dwyer, New York City (Stuart W. Axe, of counsel), for defendant Fireman's Fund Indem. Corp.

## OPINION & ORDER

SPRIZZO, District Judge:

Plaintiff Compania Transatlantica Espanola, S.A. ("CTE") brings this action against defendants Hartford Accident & Indemnity Company ("Hartford"), National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), and Fireman's Fund Indemnity Corporation ("Fireman's Fund") seeking a declaratory judgment that certain insurance policies issued by the defendants provide coverage to CTE, Grato & Son's Trucking, Inc. ("Grato"), and Raymond Rodino for their liabilities arising out of the judgment in *Matthews v. CTI Container Transport Int'l, Inc., et al.*, 86 Civ. 1420 (MGC) (S.D.N.Y.), *aff'd*, 871 F.2d 270 (2d Cir.1989) ("the underlying action"). Plaintiff also alleges that the defendants have breached those insurance contracts and therefore seeks damages, including attorneys fees and punitive damages. All parties agree that the Court must apply New York law.

Presently pending before the Court is CTE's motion for summary judgment seeking a declaration that CTE, Grato and Rodino are covered by the policies in question and dismissal of Hartford and National Union's counterclaims for indemnity and subrogation against CTE. Hartford and National Union cross-move for summary judgment declaring that the aforesaid entities

are not covered by those policies. For the reasons that follow, CTE's motion for summary judgment is denied and the cross-motions by National Union and Hartford are granted.[1]

## BACKGROUND

The underlying action arose out of a motor vehicle accident in Jericho, New York on October 24, 1985 between an automobile and a tractor-trailer.[2] *See Matthews v. CTI Container Transport Int'l, Inc.,* 871 F.2d 270, 273 (2d Cir.1989). Plaintiff in the underlying action, Thomas J. Matthews, was seriously injured in that accident. *See id.* He and his wife Kathleen sued Rodino, the operator of the tractor-trailer, and Dennis O'Connor, the operator of the automobile in which Matthews was a passenger, alleging that their negligence caused his injuries. *See id.* They also sued a number of individuals and entities on the ground that as owners of the vehicles involved in the accident they were vicariously liable for the negligence of their operators. *See id.; see also* N.Y. Vehicle & Traffic Law § 388 (McKinney 1986); *id.* at § 128 (defining "owner"). These included: Grato, as statutory owner of both the tractor and the chassis and Interpool, Ltd. ("Interpool") and CTE as statutory owners of the chassis.[3] The action was tried simultaneously to both a jury and a judge because CTE, as a corporation owned by a foreign sovereign, was entitled to a bench trial under the Foreign Sovereign Immunities Act. *See* 28 U.S.C. § 1441(d) (1988).

The jury verdict, after a reduction by the judge, awarded Thomas Matthews $7,000,-000 and Kathleen Matthews $400,000 against Rodino, Grato, Dennis and Barbara

O'Connor and Interpool. *See Matthews, supra,* 871 F.2d at 274; Affidavit of Michael D. Martocci at Ex. 1 (sworn to Feb. 25, 1989) ("Martocci Aff."). The judge awarded Thomas Matthews $4,783,150 and Kathleen Matthews $300,000 against CTE pursuant to its findings of fact and conclusions of law. *See Matthews, supra,* 871 F.2d at 274; Martocci Aff., Exs. 1, 2. Additionally, the court found that CTE was entitled to contractual indemnity from Grato and equitable indemnity from Rodino, and that Interpool was entitled to contractual indemnity from CTE and equitable indemnity from Rodino. *See* Plaintiff's Statement Pursuant to Local Rule 3(g) at ¶¶ 10–11 ("Pltf's 3(g) Statement"); Martocci Aff., Ex. 1.

Since this action requires a determination of which insurance company must bear the burden of paying CTE's, Grato's, and Rodino's share of the judgment that arose from their ownership and operation of the chassis, some background regarding the chassis is appropriate. The chassis was originally purchased by the First National Bank and Trust Company of Evanston, Illinois ("the Bank"), as trustee for International Paper & Leasing Corp. ("Int'l Paper"). *See* Hartford's Statement Pursuant to Local Rule 3(g) at ¶ 6 ("Hartford's 3(g) Statement"). The Financing Agreement between the Bank and Int'l Paper provided that the Bank would be the nominal owner of the chassis and would hold it in trust for Int'l Paper. Accordingly, the bill of sale transferred title to the Bank. *See id.* at ¶ 7. The Bank never took possession of the chassis, however, because, as trustee on behalf of the beneficial owner, it entered into a long-term lease agreement with In-

---

**1.** In light of the Court's conclusion that CTE, Grato & Rodino are not covered by the insurance policies in question, the Court need not address defendants' equitable and standing arguments.

**2.** The tractor-trailer consisted of three parts: the tractor; the trailer or chassis, bearing serial number SPAZ–173220–0; and a container which was on top of the chassis. *See Matthews, supra,* 871 F.2d at 273. A "chassis" is a wheeled frame on which containers are mounted for transportation overland. *See* Affidavit of Donald K.

Farrell at ¶ 3 (sworn to June 15, 1989) ("Farrell Aff.").

**3.** The Matthews also sued Barbara O'Connor (as owner of the automobile), CTI Container Transport Int'l and Gelco CTI Container Transport Int'l (as owners of the container). *See Matthews, supra,* 871 F.2d at 273. The claims against the owners of the container were dismissed on the ground that the vicarious liability provisions of New York law do not apply to containers which are transported on top of a chassis. *See id.* at 273–75.

terpool.[4] *See* Farrell Aff. at ¶ 12. Interpool then leased the chassis to CTE, which in turn leased it to Grato. *See* Pltf's 3(g) Statement at ¶¶ 2–3. Grato then directed Rodino to use the tractor-trailer, including this chassis, to take the container to its destination on the date of the accident. *See id.* at ¶ 4.

Several of the lease agreements between the parties provided that the lessee would indemnify the lessor or that the lessee must provide insurance coverage for the chassis. For example, the agreement between the Bank and Interpool required Interpool to procure liability insurance on the chassis. *See* Pltf's 3(g) Statement at ¶ 12; Farrell Aff. at ¶ 5; Martocci Aff. at ¶ 7 & Ex. 4. The agreement further provided that such insurance must name Interpool and the Bank as named insureds and must insure against loss or damage to the person and property of others from all activities arising from the ownership, maintenance or use of the equipment, in an amount not less than $5,000,000 for each occurrence. *See* Martocci Aff. at Ex. 4. Similarly, when Interpool leased the chassis to CTE, that lease agreement required CTE to maintain liability insurance policies satisfactory to Interpool with limitations of not less than $250,000 for each person, $500,000 for each occurrence and $100,000 for each accident. *See* Farrell Aff. at ¶ 7; Martocci Aff. at Ex. 5, at 6. And when CTE leased the chassis to Grato, that agreement required that both Grato and CTE have an endorsement to their general liability insurance policies that covered liability for the leased chassis with limits of no less than $500,000 for bodily injury and $250,000 for property damage, or single limit bodily injury and

property damage of at least $750,000. *See* Martocci Aff., Ex. 6, at 1.

In accordance with their respective obligations, Grato entered into an insurance contract with Fireman's Fund[5] and Interpool entered into two insurance contracts with National Union and an excess insurance agreement with Hartford. However, although it represented to Interpool that it had obtained insurance coverage, *see* Farrell Aff. at ¶¶ 14–15, CTE did not obtain any insurance to cover the chassis. *See id.* at ¶ 16.

The first policy issued by National Union was policy No. BA 118 31 96 RA ("the Business Auto policy") (annexed to Martocci Aff. at Ex. 9). This policy had a limit of $1,000,000 and covered the period from December 1, 1984 to December 1, 1985. The second policy issued by National Union in favor of Interpool was policy No. GLA 117 06 09 RA ("the General Liability policy") (annexed to Martocci Aff. at Ex. 10). This policy was issued by National Union to cover the period from December 1, 1984 to December 1, 1985. The limit of this policy is also $1,000,000.

There is no dispute that the General Liability policy covered Interpool's liabilities arising out its lease of the chassis from the Bank and its sublease to CTE. *See* Farrell Aff. at ¶ 17; Martocci Aff., Ex. 10, at 38. However, as plaintiff concedes, that policy does not have a permissive user clause and therefore does not provide coverage to CTE, Grato or Rodino. *See* CTE's Memorandum of Law to Support Motion for Summary Judgment at 7–8 (Feb. 27, 1989). Therefore, the issue presented here with respect to National Union's policies is

---

4. Interpool asserted as defense to the Underlying Action that because it had neither title to nor possession of the chassis it was not an owner pursuant to N.Y. Vehicle & Traffic Law § 128 and therefore could not be vicariously liable for Rodino's negligence under N.Y. Vehicle & Traffic Law § 388. Both the district court and the court of appeals rejected this argument and concluded that the lease was designed for security purposes only and therefore Interpool could be considered the owner of the chassis within the meaning of that statute. *See Matthews, supra,* 871 F.2d at 275–76.

5. The Fireman's Fund policy, No. 558 03 85, was issued on September 25, 1985. The policy had a total limit of liability of $1,000,000 and insured Grato, Rodino, the tractor and, as Fireman's Fund concedes, CTE. *See* Affidavit of Stuart W. Axe at ¶ 3 (sworn to June 15, 1989). Fireman's Fund has, however, made a motion for summary judgment asserting that various provisions of the insurance policy bar CTE's recovery.

whether CTE, Grato and Rodino are covered by the Business Auto policy.

The excess insurance policy issued by Hartford, Hartford Umbrella Policy No. 10 HUJV 2369 ("the Hartford Umbrella Policy") (annexed to Martocci Aff. at Ex. 11), provided coverage up to $10,000,000 in excess of the $1,000,000 limits of the National Union policies. It covered the same period of time as the National Union Policies, December 1, 1984 to December 1, 1985.

## DISCUSSION

### The Business Auto Policy

■ CTE argues that it, Grato and Rodino are insureds under the Business Auto policy issued by National Union to Interpol because it was using the chassis with Interpool's permission.[6] However, to prevail on this claim, CTE must first demonstrate that the chassis itself was covered under that policy.

An "auto" is defined by the policy as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, but does not include mobile equipment." Business Auto Policy at Part I, § D (Martocci Aff., Ex. 9, at 4). CTE argues that the "chassis" at issue was a "trailer" within the meaning of the insurance contract. The Court rejects that contention.

The terms "chassis" and "trailer" are clearly not interchangeable in this case. Interpool entered into two insurance contracts with National Union: the Business

Auto policy, which by its terms covered cars and certain trailers, and the General Liability policy, which covered all other equipment, including the "chassis." Martocci Aff., Ex. 10, at 38; see Affidavit of James C. DeSimone Aff. at ¶ 4 (sworn to June 2, 1989) ("DeSimone Aff."); Drake Aff. at ¶¶ 4, 8; Farrell Aff. at ¶ 19. Furthermore, the lease agreement between CTE and Interpool clearly provided that CTE was leasing a "chassis," not a "trailer." See Martocci Aff., Ex. 5, at 11–12. The Second Circuit has stated that "the meaning of particular language found in insurance policies should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'" Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir.1986) (quoting Champion Int'l Corp. v. Continental Casualty Co., 546 F.2d 502, 505 (2d Cir.1976), cert. denied, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977)). Here, the terms "chassis" and "trailer" are clearly distinguishable from each other and the business purposes of Interpool manifest a deliberate intent to distinguish between the two. Therefore, in light of the circumstance that Interpool obtained insurance coverage specifically for a "chassis," and denominated the vehicle at issue in this case as a "chassis" not a "trailer" in its dealings with CTE, the Court concludes that the chassis is not covered by the Business Auto policy.[7]

6. The Business Auto Policy's permissive user provision provides as follows:

D. WHO IS INSURED

. . . . .

2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except: [exceptions not relevant here].

7. The defendants have submitted affidavits in support of their cross-motions for summary judgment that state that Interpool intended to obtain coverage for the chassis, containers and other equipment and/or vehicles that it leased to others under the General Liability policy and that it intended the Business Auto policy to provide coverage for the fleet of commercial and passenger vehicles that it operated. See Affidavit of Kathy Drake at ¶¶ 2–5, 7–10 (sworn to June 15, 1989) ("Drake Aff."); Farrell Aff. at ¶ 19. These affidavits support the defendants'

contention that CTE, Grato and Rodino are not covered by the Business Auto Policy. Plaintiff has not submitted any evidentiary materials to rebut these affidavits; instead, counsel argues that they are "illusory statements of intent" which must be rejected as a matter of law. See Plaintiff's Reply Memorandum of Law at 20–21. This response is insufficient to contradict the facts set forth in those affidavits because Fed.R. Civ.P. 56(e) clearly states that a party opposing a motion for summary judgment must "by affidavits or as otherwise provided in this rule, ... set forth specific facts showing that there is a genuine issue for trial." Id. Moreover, "if the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id. However, the Court need not decide whether summary judgment should be granted on the basis of these affidavits alone because, as noted above, plain-

Plaintiff also contends that the Second Circuit's decision in the underlying action that Interpool was the "owner" of the chassis and therefore could be held liable under N.Y. Vehicle & Traffic Law § 388, *see Matthews, supra,* 871 F.2d at 275–76, necessarily constituted a holding by that Court that this "chassis" was a "trailer." The Court does not agree. The Second Circuit was not confronted with nor did it even address the distinction found in these insurance contracts between "trailers" and "chassis" for purposes of determining coverage under the terms of the insurance policies involved. Rather, that decision was based upon the need to interpret provisions of the New York Vehicle and Traffic law in order to implement that state's strong public policy in favor of ensuring that an injured plaintiff may seek a recovery from a financially responsible person. *See Caldararo v. Au,* 570 F.Supp. 39, 41 (S.D.N.Y.1983); *Continental Auto Lease Corp. v. Campbell,* 19 N.Y.2d 350, 352, 227 N.E.2d 28, 29, 280 N.Y.S.2d 123, 124 (1967). That policy is hardly implicated in a case where, as here, a financially responsible entity is attempting to demonstrate that it is an insured under another entity's insurance policy.

Furthermore, even if the Court agreed with CTE's contention that this chassis was a trailer within the meaning of the Business Auto policy, that policy nevertheless specifically excluded coverage of the chassis. The policy provides for coverage of trailers as follows: "[i]f the policy provides for liability insurance, the following types of autos are covered autos for liability insurance: 1. Trailers with a load capacity of 2,000 pounds or less designed primarily for travel on public roads." Martocci Aff., Ex. 9, at 4. It cannot be seriously disputed that the chassis had a load capacity in excess of 2,000 pounds, *see* Drake Aff. at ¶ 6; DeSimone Aff. at ¶ 5, and thus coverage is excluded by the clear and unambiguous language of the insurance agreement itself. *See Government Employees Ins. Co. v. Kligler,* 42 N.Y.2d 863, 864–65, 366 N.E.2d 865, 866, 397 N.Y.S.2d 777, 778 (1977).

CTE also asserts that it is covered under this policy by virtue of an endorsement entitled "Contingent and DIC Insurance." [8] However, that provision was clearly designed to exclude coverage for Interpool where Interpool's loss was covered by another policy of insurance obtained by a lessee. This is made especially evident by the fact that the provision further provided that if the lessee's insurance were for any reasons invalid, then Interpool would be covered under this policy and National Union could assess additional premiums for the additional risk it would have incurred. It would hardly be rational to construe a provision so clearly designed for Interpool's benefit to provide coverage for a lessee, such as CTE, that defaulted on its obligation to provide the insurance coverage it had agreed with Interpool to obtain. *Cf. Newmont Mines, supra,* 784 F.2d at 135 ("[u]nless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided").[9]

---

tiff is excluded from coverage by the clear terms of the policy.

**8.** This endorsement provides as follows:
With respect to claims involving vehicles leased by a lessee of the Insured and/or its subsidiaries or divisions, this coverage shall be contingent only insofar as it shall not provide duplicate coverage for claims for which the Named Insured and/or its subsidiaries or divisions is actually defended and held harmless against under any enforceable policy of insurance that may have been procured by the lessee. Should the lessee's insurance become invalid for any reason, this policy shall become primary with premium charge to be determined at audit based upon the previous-

ly agreed composite rates outlined on the Composit Rating Plan Endorsement on this policy.
Martocci Aff., Ex. 9, at 11.

**9.** Equally fallacious and indeed frivolous is CTE's assertion that it is an insured under the Business Auto policy because of an endorsement to that insurance policy which adds entities who lease equipment to Interpool and require that Interpool obtain liability insurance on those vehicles as insureds under the policy. *See* Martocci Aff., Ex. 9, at 14. That provision provides coverage for entities that lease equipment *to* Interpool, not entities such as CTE that lease equipment *from* Interpool. Moreover, even if the provision did provide coverage to a

*Hartford Umbrella Policy*

The Hartford policy, as an excess insurance policy, provided coverage "on behalf of the insured ultimate net loss in excess of the total applicable limit (as stated in the Extension Schedule of Underlying Insurance Policies) of underlying insurance or the amount of the self-insured retention when no underlying insurance applies, because of bodily injury, personal injury, property damage or advertising injury to which [the] insurance applies, caused by an occurrence." *See* Martocci Aff., Ex. 11, at 2. CTE advances the following arguments for coverage under this policy: (1) since the chassis is concededly covered by the General Liability Policy and CTE, Grato & Rodino fit within the definition of persons insured in the Hartford Policy, then the Hartford policy allegedly covers them for their liability in this accident as an excess policy to the General Liability Policy; and (2) even if none of the underlying policies cover CTE, Grato & Rodino, they are persons insured under the Hartford policy it-

self and are entitled to drop-down primary coverage in excess of a self-insured retention of $10,000.[10]

Both of these arguments require that the CTE, Grato and Rodino demonstrate that they are additional insureds under the excess insurance contract.[11] For the reasons that follow, the Court concludes that they are not.

■ The initial inquiry in determining whether a permissive user is covered under this policy must be whether Interpool "owned" the chassis within the meaning of the policy or whether the chassis was "hired for use by or on behalf of Interpool." The term "own" is not defined in the insurance contract, which requires that the Court give that term its normal meaning. *See HS Equities, Inc. v. Hartford Acc. & Indem. Co.*, 609 F.2d 669, 673–74 (2d Cir.1979) ("the general rule [is] that the words used in an insurance contract are to be given their normal meaning absent a

leasee, the 35 automobiles covered under that endorsement are listed as part of the policy, *see* Martocci Aff., Ex. 9, at 23–26; DeSimone Aff. at ¶ 8, and the chassis involved in this case is conspicuously absent from that list. *See* Drake Aff. at ¶ 8. Accordingly, neither the chassis nor its leasee are covered by this endorsement.

**10.** CTE also argues that because it, Grato & Rodino are additional insureds under National Union's Business Auto Policy they are also covered under a provision of the Hartford Umbrella Policy which provides coverage to an insured under a policy of underlying insurance. This argument lacks merit because this provision is subject to the limitations of the Business Auto Policy, which, as the Court has already concluded, did not cover the "chassis." *See* pp. 218–219, *supra*. It follows that since CTE, Grato and Rodino could only be additional insureds under that policy because of their relationship to the "chassis," the absence of coverage for the "chassis" under the Business Auto policy precludes coverage as to them under the Hartford Umbrella policy also.

**11.** The provisions regarding who is an insured provide in relevant part:

III PERSONS INSURED
Each of the following, including the named insured, is an insured under this insurance to the extent set forth below:

 &ast; &ast; &ast; &ast; &ast; &ast;

F. with respect to any automobile owned by the named insured or hired for use by or on behalf of the named insured, any person (including an employee of the named insured) while using such automobile and any person or organization legally responsible for the use thereof, provided its actual use is with the permission of the named insured, except . . .

 &ast; &ast; &ast; &ast; &ast; &ast;

(2) the owner or any lessee, other than the named insured, of a hired automobile or any agent or employee of such owner or lessee . . .

 &ast; &ast; &ast; &ast; &ast; &ast;

H. any other person or organization who is an insured under any policy of underlying insurance, subject to all the limitations upon coverage under such policy other than the limits of the underlying insurers liability.
With respect to any person or organization that who is not an insured under an underlying insurance policy, coverage under this policy shall apply only to the ultimate net loss in excess of the underlying insurance or self-insured retention applicable to the named insured.
Hartford Umbrella Policy, Martocci Aff., Ex. 11, at 4–5.

clear showing of contrary intention"). The term "own" generally refers to possession of title to a vehicle and the ability to convey title to another. *See Fulater v. Palmer's Granite Garage, Inc.*, 90 A.D.2d 685, 685, 456 N.Y.S.2d 289, 290 (4th Dep't 1982); *Liberty Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 140 Misc.2d 53, 54–55, 529 N.Y. S.2d 956, 957 (Sup.Ct.Nassau Co.1988).

Tested by that standard, Interpool was clearly not an owner. Indeed, the terms of the lease agreement between the Bank and Interpool clearly provided that the Bank was to remain the owner of the chassis and constantly referred to Interpool as the lessee. *See* Farrell Aff., Ex. E, at 55, 60–61. That agreement further provided that the lessee could not transfer, assign, or pledge the agreement or the equipment or any interest therein without the written consent of the lessor, except that the lessee could sublease the equipment. *See id.* at 53. Moreover, the agreement even required Interpool to affix a sign to the chassis stating that it was owned by the Bank, not the lessee. *See id.* at 14. In addition, the chassis was registered in the name of the Bank as lessor and Interpool as lessee. *See* Farrell Aff. at Ex. F. Finally, there is no indication in the insurance agreement itself that Hartford and Interpool intended

to attach a meaning other than the traditional meaning to the word "owned." [12]

CTE's reliance upon *Matthews, supra*, 871 F.2d at 275–76, where the Second Circuit held that Interpool was an "owner" of the chassis within the meaning of the New York Vehicle and Traffic law, is misplaced. That case involved the construction of a provision of New York law which had specifically defined ownership to include possession of a vehicle through a lease with a security interest in another person. *See id.* at 275; *cf. Liberty Mut. Ins. Co., supra*, 140 Misc.2d at 54–55, 529 N.Y.S.2d at 957. Moreover, as the Court noted above, that statute involves policies not implicated in this case, *i.e.*, the need to provide injured plaintiffs with a financially responsible person from whom they can recover.[13]

The question of whether the chassis was hired for use by Interpool is, of course, another matter. The Court cannot accept Hartford's contention that the chassis was not "hired for use by or on behalf of the named insured" because that chassis was not used and controlled by the named insured in its business. The term "used" could rationally be construed to mean "used" as part of Interpool's business of leasing equipment to others.[14] *Cf. Chapin v. Northwestern Pac. Indem. Co.*, 49 Or.

**12.** Although the New York Court of Appeals has held that in some circumstances an insured can be considered an owner of a vehicle under an insurance policy before a bill of sale has been exchanged or where the vehicle is registered in another's name, *see Dairylea Co-op, Inc. v. Rossal*, 64 N.Y.2d 1, 473 N.E.2d 251, 483 N.Y.S.2d 1001 (1984); *Fidelity & Cas. Co. of N.Y. v. Cosmopolitan Mut. Ins. Co.*, 33 N.Y.2d 966, 309 N.E.2d 133, 353 N.Y.S.2d 734 (1974), those cases are inapposite because they involved situations where there was an intention by the parties to transfer title prior to the accident which gave rise to the insurance dispute. In this case, there was clearly no intention to pass title to the chassis to Interpool unless Interpool exercised an option to purchase it at the end of the lease term. *See* Farrell Aff., Ex. E, at 38–43.

**13.** Similarly, the Court notes that N.Y. Ins. Law § 5102(e) (McKinney 1985), which defines the term "owner" to have the same meaning as it has in section 128 of the Vehicle & Traffic law, is also irrelevant. That section defines an "owner" for the purposes of fixing liability under New York's Comprehensive Motor Vehicle In-

surance Reparations Act (no-fault insurance law); it provides no guidance for determining whether Interpool "owned" the chassis within the meaning of the agreement it negotiated with Hartford.

**14.** *McConnell v. Fireman's Fund American Ins. Co.*, 79 Misc.2d 219, 359 N.Y.S.2d 224 (Sup.Ct. Oneida Co.1974), *aff'd*, 49 A.D.2d 676, 370 N.Y. S.2d 730 (4th Dep't 1975), and *Thomas v. Travelers Ins, Co.*, 87 Misc.2d 136, 384 N.Y.S.2d 610 (Sup.Ct.Cattaraugus Co.1976), do not help Hartford's argument. In *McConnell*, the court held that a parked car was not being "used or operated" under the statutory definition contained in New York's no-fault insurance laws. *See* 79 Misc.2d at 222, 359 N.Y.S.2d at 226–27. Similarly, the *Thomas* court held that a plaintiff who was entering into a parked vehicle was not "using," the car within the meaning of the no-fault law. *See* 87 Misc.2d at 139, 384 N.Y.S.2d at 612. Neither case involved construction of a liability insurance contract negotiated by two business entities but only considered what those words could reasonably be construed to mean in the context of those particular statutes.

App. 139, 619 P.2d 300, 304–05 (Ct.App. 1980) (lessee who subleased truck to United States government for its own benefit was "using" the truck at the time of the accident). In other words, Interpool's "use" of the chassis could be construed to be its action of leasing the chassis to CTE.

It is a well-settled rule in New York that an ambiguous clause in an insurance contract must be construed in favor of the insured. *See Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 353, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 354 (1978). This rule has been held to apply even in a situation where a third-party is seeking to establish that he is an additional insured under the policy. *See Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 360–61, 314 N.E.2d 37, 38–39, 357 N.Y.S.2d 705, 708 (1974); *Hutzel v. United States Aviation Underwriters, Inc.*, 132 A.D.2d 45, 50, 522 N.Y.S.2d 301, 304 (3d Dep't 1987), *lv. to appeal denied*, 71 N.Y.2d 804, 528 N.Y.S.2d 829, 524 N.E.2d 149 (1988). Since any ambiguity must be resolved against the insurer, the Court must conclude that the chassis was "hired for use by" Interpool and that the provisions of section III F of the insurance contract apply.

██ Having concluded that the provisions of section III F apply to CTE, Grato and Rodino, the Court must next consider whether, as Hartford argues, they are excluded by section III F(2), which provision excludes from coverage "the owner or any lessee, other than the named insured, of a hired automobile or any agent or employee of such owner or lessee." *See* Martocci Aff., Ex. 11, at 4. This provision clearly excludes a party who is a "lessee" of a "hired automobile," other than the named insured Interpool. It follows that even assuming arguendo that the chassis was a "hired automobile" under this policy, CTE, Grato and Rodino, as lessees of the chassis, are excluded by this provision. *See Employers Ins. Co. of Wausau v. Auto Owners Ins. Co.*, 775 F.2d 774, 776–77 (6th Cir.1985). This conclusion finds further support in the circumstance that each of the entities who leased vehicles from Inter-

pool were obligated to provide liability insurance on those vehicles. *See* Affidavit of Vincent Badoloto at ¶¶ 4–5 (sworn June 14, 1989); Drake Aff. at ¶ 12; Farrell Aff. at ¶ 20.

*American Home Assurance v. Hartford Ins. Co.*, 74 A.D.2d 224, 427 N.Y.S.2d 26 (1st Dep't 1980), is not to the contrary. That case held that an identical exclusion did not apply when the vehicle was owned by the named insured. *See id.* at 228, 427 N.Y.S.2d at 29. The court stated that "[a]ny other construction would exclude coverage of a vehicle *owned by* [the named insured, a leasing company,] as soon as it was leased," which would be incompatible with the insurance contract's permissive user clause. *Id.* (emphasis added). In this case, where the Court has concluded that Interpool did not own the chassis, the exclusion has the effect of excluding from coverage entities other than the named insured, and does not in any way subvert the permissive user clause in the policy.

## CONCLUSION

For the reasons set forth above, the Court concludes that CTE Grato and Rodino are not covered by any of the following insurance policies: National Union Policy No. BA 118 31 96 RA; National Union Policy No. GLA 117 06 09 RA; or Hartford Umbrella Policy No. 10 HUJV 2369. Accordingly, CTE's motion for summary judgment is denied and Hartford and National Union's cross-motions for summary judgment declaring that CTE, Grato and Rodino are not covered by the foregoing policies are granted.

It is SO ORDERED.